WILLIAM D. PALMER, Respondent, v. LARCHMONT ELECTRIC
COMPANY, Appellant.

1. HIGHWAYS — LIGHTING FOR PUBLIC USE — INCIDENTAL BURDEN
UPON FEE. The lighting of a highway is not only one of the uses to
which the public ways may be devoted, but in the case of crowded thor-
oughfares, whether urban or rural, a duty devolves upon the munici-
pality of supplying it; and in such cases it is one of the burdens upon the
fee which must be borne as an incident to the public right of traveling
over the way, and is deemed one of the uses for which the land was taken
as a public highway.

2. STREET PURPOSE — ELECTRIC LIGHT POLES AND WIRES. The light-
ing of a highway is a street purpose, and is within the grant of lands for
highway purposes whenever the necessity for such use arises; and the
erection and maintenance of poles and electric wires for that purpose
within the lighted highway, without compensation to the abutting owner
of the fee, is permissible, as distinguished from telegraph and telephone
poles and wires, which do not aid the public in traveling the highway.

3. COUNTRY HIGHWAY — FUTURE USES. When land is taken for a
country highway, leaving the fee in the abutting owner, it is impliedly
dedicated to the uses which the public may in future require, including
the use of the highway for the purpose of lighting it.

4. DETERMINATION OF NECESSITY OF LIGHTING HIGHWAY — TOWN
CONTRACT WITH ELECTRIC COMPANY. The question whether the public
use requires the lighting of a country highway in a town is primarily
within the determination of the municipal authorities of the town, on
contracting for the lighting of the highway by an electric company
organized under the Transportation Corporations Law (L. 1890, ch. 566,
§§ 60, 61).

5. OWNER OF FEE NOT ENTITLED TO COMPENSATION FOR USE OF
HIGHWAY FOR ELECTRIC LIGHTING. The abutting owner of the fee in a
highway in a town is not entitled to compensation for the ground in the
highway in front of his premises occupied by the poles of an electric
company duly organized under the Transportation Corporations Law, on
which are suspended wires and lamps for lighting the highway, where
the town authorities have determined the necessity for the lighting and,
with the authority of the legislature, have contracted with the company
to furnish it, under a contract which has not been assailed by any
taxpayer.

*Palmer* v. *Larchmont El. Co.*, 6 App. Div. 12, reversed.

(Submitted January 19, 1899 ; decided February 28, 1899.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the second judicial department, entered

June 13, 1896, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Wm. Sam. Johnson* for appellant. The poles of the defendant electric company, since they are necessary to the lighting of the public highway, are lawfully placed in the street in front of plaintiff's land, and cannot be ejected therefrom. (*C. G. & E. L. Co.* v. *C. S. Co.*, 39 N. Y. S. R. 703; *Johnson* v. *T. H. E. Co.*, 54 Hun, 469; *Eels* v. *A. T. & T. Co.*, 143 N. Y. 133; *E. C. Co.* v. *Heffernan*, 34 N. Y. S. R. 436; *Tuttle* v. *B. El. I. Co.*, 18 J. & S. 464.) It was error for the trial court to exclude evidence showing that the district furnished with electric lights by defendant is a large and populous village. (*Witcher* v. *H. W. W. Co.*, 66 Hun, 619; *Van Brunt* v. *Town of Flatbush*, 128 N. Y. 50.)

*Wm. Porter Allen* for respondent. Ejectment is the proper form of remedy. (*Eels* v. *A. T. & T. Co.*, 143 N. Y. 133.) Defendant is attempting to maintain a new and exclusive easement over plaintiff's land in addition to that of the public to pass and repass. (*Williams* v. *N. Y. C. R. R. Co.*, 16 N. Y. 97; *Craig* v. *R., C. & B. R. R. Co.*, 39 N. Y. 404; *Eels* v. *A. T. & T. Co.*, 143 N. Y. 133; L. 1896, ch. 446; *Story* v. *N. Y. El. R. R. Co.*, 90 N. Y. 122; *Fobes* v. *R., W. & O. R. R. Co.*, 121 N. Y. 505.) Palmer avenue is a rural highway and not an urban street, and the town of Mamaroneck cannot be considered a thickly populated community, but is a purely rural district. (*Coulson* v. *Whitney*, 12 Daly, 408; *Pepin* v. *Lachenmeyer*, 45 N. Y. 27; *Witcher* v. *H. W. W. Co.*, 66 Hun, 619; *Crooke* v. *F. W. W. Co.*, 29 Hun, 245; *Gorham* v. *E. E. Co.*, 80 Hun, 290; *Fobes* v. *R., W. & O. R. R. Co.*, 121 N. Y. 505; *Van Brunt* v. *Town of Flatbush*, 128 N. Y. 50; *C. G. & E. Co.* v. *C. S. Co.*, 39 N. Y. S. R. 703; *Johnson* v. *T.-H. E. Co.*, 54 Hun, 469; *E. C. Co.* v. *Heffernan*, 34 N. Y. S. R. 436.) Defendant has unlawfully

disseized the plaintiff. (*B.*, *etc.*, *G. L. Co.* v. *Calkins*, 62 N. Y. 386; L. 1883, ch. 371; L. 1890, ch. 568, § 44.)

HAIGHT, J.  This is an action in ejectment to compel the defendant to remove its poles and wires from Palmer avenue in front of the plaintiff's premises.  The plaintiff is the owner of lands at the corner of Palmer and Rushmore avenues in the town of Mamaroneck, Westchester county, and his fee extends to the center of the highways, subject to the easements of the public therein.  The defendant is an electric corporation organized under the Transportation Corporations Law of this state (L. 1890, ch. 566), having for its objects the manufacture and use of electricity, for producing light, heat or power, and in lighting streets, avenues, public parks and places and public and private buildings of cities, villages and towns within this state.  On the 14th day of March, 1894, it obtained a grant from the town board of the town of Mamaroneck, giving it the right to construct and maintain suitable lines of wire for the purpose of conducting electricity to such points within the corporate limits of the town as may seem fit to the company, subject, however, to certain rules and restrictions specifically mentioned, among which were the requirements that the wires should be insulated, conducted upon poles of a specified size and uniformity, made straight and attractive in appearance, on which wires should be strung not less than eighteen feet from the ground.  The grant contained the further condition that the company shall furnish to the town $100 worth of light free of charge each and every year, and for every $1,000 worth of light bought by the town from the company an additional $100 worth of free light shall be furnished, the light to be placed in such locations as shall be designated by the town board.  Pursuant to this grant the town contracted for certain lights at the rate of $22.50 per light per year, and thereupon, pursuant to the grant and contract, the defendant constructed its line of wire through Rushmore and Palmer avenues, locating a light on the corner of those avenues in front of plaintiff's premises,

and erected on Palmer avenue, in front of his premises, two poles on which the wires were strung, and which the evidence shows were necessary to enable the company to perform its contract with the town.

This action was prosecuted to recover the possession of the lands occupied by these poles and for damages.

The care, management and control of the public ways devolve upon the local municipal government in which they are located, and it is the duty of the local government to maintain them in such condition that the public, by the exercise of due care, may pass over them in safety. In the darkness of the night, in crowded thoroughfares, light is an important aid, largely tending to promote the convenience, as well as the safety, of the traveling public. It is not only one of the uses to which the public ways may be devoted, but in the case of crowded thoroughfares a duty devolves upon the municipality of supplying it. In such cases it is one of the burdens upon the fee which must be borne as an incident to the public right of traveling over the way, and is deemed one of the uses for which the land was taken as a public highway. (*Johnson* v. *Thomson-Houston El. Co.*, 54 Hun, 469; *Consumers' Gas & El. L. Co.* v. *Congress Spring Co.*, 61 Hun, 133; *Witcher* v. *Holland Water Works Co.*, 66 Hun, 619; *S. C.* affirmed, 142 N. Y. 626; *Hequembourg* v. *City of Dunkirk*, 49 Hun, 550; *Sun Pub. Assn.* v. *Mayor*, etc., 152 N. Y. 257, 265; *Van Brunt* v. *Town of Flatbush*, 128 N. Y. 50, 56.)

As we understand the opinion of the learned court below, its views are in accord with our own, as applied to public highways in cities and incorporated villages, but it reached the conclusion that the rule was different with reference to country highways, and that the density of population ought not to be made the test in determining the line in respect to easements which separate the urban from the rural districts. (6 App. Div. 12.) That court was also of the opinion that this case was controlled by the case of *Eels* v. *Am. Tel. & Tel. Co.* (143 N. Y. 133).

Our views are somewhat different. We think the *Eels* case is clearly distinguishable from that under consideration. In that case ejectment was brought to remove the poles of a telegraph and telephone company which were not used in any sense for a street purpose. It is urged that the wires might be used for the purpose of notifying the fire department of a municipality of the breaking out of a fire. Undoubtedly, and so far as they are used for that purpose, it clearly would be for a municipal purpose, but there is a broad distinction between a municipal purpose and a street purpose. The primary object of highways is for the public travel by persons and animals, and by carriages or vehicles used for the transportation of persons and goods, other than by railroads. Sewers drain the surface water from the highways, and thus relieve them from impairment and destruction. In this respect sewers are for a street purpose. In addition, they may drain also the abutting property and houses and thus tend to promote the public health. In this respect they are for a muncipal purpose. Water supplied by mains through the highways may be used for cleansing and sprinkling the streets. In this respect it is for a street purpose. It may be used by the abutting owners for cleansing and for domestic purposes, and is also used for the extinguishment of fires. In this respect it is for a municipal purpose. Light is, as we have seen, an aid to the public in the night time in traveling upon the highway It is, therefore, used for a street purpose. All of the street purposes which we have referred to are clearly incident to the highway and are deemed within the grant of lands for highway purposes whenever the necessity for these uses arises. Not so with telegraph and telephone wires. They in no way preserve or improve the streets or aid the public in traveling over them.

We are thus brought to a consideration of the difference between urban and rural streets. That there is a distinction between such streets has long been recognized by the authorities, but a careful examination of the cases discloses the fact that the distinction arises out of the necessary requirements of the public in the use made of them.

Dillon, in his work upon Municipal Corporations (Vol. 2, § 688), says: " In the author's judgment, the uses to which streets in towns and cities may legitimately be put are greater and more numerous than with respect to ordinary roads or highways in the country. With reference to these all the public requires is the easement of passage and its incidents, \* \* \* but, with respect to streets in populous places, the public convenience requires more than a mere road to pass over and upon them. They may need to be graded and brought to a level, and, therefore, the public or municipal authorities may not only change the surface but cut down trees, dig up the earth, and may use it in improving the street or elsewhere, and may make culverts, drains and sewers upon or under the surface." This same distinction was made in *Matter of the Petition of the Bloomfield & Rochester Natural Gas Light Co.* v. *Calkins* (62 N. Y. 386), in which it was held that a gas light company could not lay its pipes in a country highway without compensation to the owner of the abutting land, where its pipes were not used for the lighting of the highway through which the company sought to lay its pipes. But the owner of the fee in a country highway, taken, opened and dedicated for a public use, is entitled to no further compensation after the territory has become thickly settled and the highway has become a street of an incorporated city. This was recognized in the *Eels* case, and it is, therefore, apparent that, at the time the land was taken for a highway, it was impliedly dedicated to the uses which the public might in the future require. Light may not be necessary in an ordinary country highway, and yet there may be country roads in which the travel is so great as to make light a necessity in order to avoid collisions and injuries in the night time. The inhabitants of our large cities are in a measure supplied with food and other necessaries of life from the surrounding country. Scarcely a city can be named in which there will not be found one or more great public highways leading into the country, which, day and night, are thronged with teams transporting the produce of the farm to the mar-

kets of the city.   Towns, in some instances, have recognized
the public necessity, and have caused some of these thorough-
fares to be lighted.   In many of our towns there are villages
of considerable size remaining unincorporated, in which lights
in the street would be of great convenience and materially add
to the safety of the public.   May not towns properly supply
these streets and thronged highways with light?   If they
may, they may properly contract with others to supply the
light.   The court below appears to have feared trouble with
reference to the determination of the question of the necessity
for light by the courts, and thought that each case would have
to be determined on its own facts, and that the decision in
each would vary with the varying minds and judgments
of the courts and petit jurors, but we apprehend no diffi-
culty in this regard.   We think that question should be
left to the determination of the parties specified by the
statute.   Indeed, it appears to us that the question under dis-
cussion is entirely controlled by the statute.   The statute not
only authorizes the incorporation of companies for supplying
gas for the lighting of streets in cities, towns and villages, but
it also authorizes the incorporation of companies for the manu-
facturing and supplying of electricity for lighting streets,
avenues, public parks and places in cities, villages and *towns.*
It then provides that such corporations using electricity for
light, heat or power may carry on the business of lighting
"by electricity or using it for heat or power in cities, *towns*
and villages within this state, and the streets, avenues, public
parks and places thereof, and public and private buildings
therein; and for the purposes of such business to generate and
supply electricity   *   *   *   and to lay, erect and construct
suitable wires or other conductors, with the necessary poles,
pipes or other fixtures in, on, over and under the streets,
avenues, public parks and places of such cities, *towns* or vil-
lages, for conducting and distributing electricity, with the
consent of the municipal authorities thereof, and in such
manner and under such reasonable regulations, as they may
prescribe." (Transportation Corporations Law, §§ 60, 61.)

The Town Law provides that a town is a municipal corporation comprising the inhabitants within its boundaries. (§ 2.)

It will be observed that no distinction is made by the statute between cities, towns and villages; that a corporation, organized under the provisions of the act, may, with the consent of the municipal authorities, under such reasonable regulations as they may prescribe, construct suitable wires or other conductors with the necessary poles, pipes or other fixtures in, on, over and under the streets, etc., of the town as well as that of the city or an incorporated village. Who can better determine the necessity for light in a highway than the inhabitants of the town through which it runs? Shall the courts assume the prerogative of saying that a town shall or shall not have light, when the statute provides that its municipal authorities shall determine the question? No citizen of the town is here complaining with reference to the action of the municipal authorities of the town of Mamaroneck in contracting with the defendant for light. If these town officers have exceeded their authority and wasted the public moneys the courts are open to correct the abuse and prevent the waste in a suit by a taxpayer; but no such person is here complaining of the action of the town authorities. The plaintiff is not complaining of the contract or of the supplying of his premises with light. He is seeking compensation for the ground occupied by the poles of the company in the highway in front of his premises. The authorities of his town having determined the necessity for the light and contracted with the defendant to furnish it; and the light being for a street purpose, we think no burden is placed upon the fee that was not within the implied contemplation of the parties at the time the land was taken and dedicated to highway purposes.

Our conclusion is supported by authority. In the case of *Van Brunt* v. *Town of Flatbush* (128 N. Y. 50), Earl, J., refers to the question we have had under consideration in discussing the right to construct a sewer in the town of Flatlands. He says: " If the legislature had authorized a system of sewerage in the town of Flatlands for the convenience, health and

welfare of the inhabitants of that town, and this sewer had been projected with lateral sewers, with the privilege of the owners of adjacent lots to connect their lots therewith, then we are inclined to believe, for reasons we need not now state, that the character of the avenue and of the locality was such and the population is such that the sewer could be built in the avenue without the consent of the fee owners and without compensation to them."

In the case under consideration, as we have seen, the legislature has authorized the municipal authorities of the town to contract for the providing of light for street purposes.

Again, in the case of *Witcher* v. *Holland Water Works Co.* (66 Hun, 619), an action was brought by an abutting owner to recover the possession of lands in a public highway, occupied by the defendant with water pipes and a hydrant. The village of Holland was unincorporated; a water pipe had been laid through the highway and hydrants had been established, from which the water might be taken for street purposes. It was held, in the General Term, that there was a public necessity for the water, and that it being for street purposes the plaintiff was not entitled to recover, and that conclusion was affirmed in this court. (142 N. Y. 626.) And in the case of *People ex rel. Woodhaven Gas Light Co.* v. *Deehan* (153 N. Y. 528) we held that a grant by the authorities of a town to a gaslight company to lay conductors for conducting gas through the public highways of the town was valid.

There is no question of public policy that is adverse to our contention. It may be that the owners of the fee in highways should not be burdened with sewers, conductors or wires, in which they have no interest or right to use, but which are intended for the use of other localities; but sewers, conductors and lighting wires intended for the use, benefit and improvement of the highway through which they pass, and of the abutting owners thereon, which promote the comfort and safety of the traveling public, stand upon a different footing and impose no burden upon the fee not intended by the grant for highway purposes. It may be that some prejudice exists

against wires strung on unsightly poles, but the statute empowers the citizens of the locality, through their duly constituted authorities, to determine the manner and the regulations in and under which the wires should be constructed. They may specify, as was done in this case, the character of poles that shall be used, or they may require that the wires shall be placed in conduits under ground. The whole matter is left to their judgment and discretion. If the people of a town want light in their highways and are willing to pay for it, no reason is apparent, founded upon public policy, morals or law, why the courts should interfere to prevent it. If the highway be but a country road, lightly traveled, and no necessity exists for light, then a taxpayer has a right to object, but, until such objection is made, we think it may fairly be assumed that the necessity for the light exists. The statute has given to the authorities of a town the power to determine whether they will have light. The question of necessity must, in the first instance, be determined by such authorities, and in this case no person is in court seeking to review the determination made by the authorities of the town of Mamaroneck in contracting with the defendant.

The judgment should be reversed and a new trial granted, with costs to abide the event.

All concur, except MARTIN and VANN, JJ., dissenting.

Judgment reversed, etc.