Spear, J.
The determination of the rights of the parties in this case involves an inquiry respecting the interest which the owner of land abutting on the streets of a municipality has in those streets. As to country highways it seems to be settled in this state that while the public has the right of improvement and uninterrupted travel, the abutting owner has the right to all uses of the land not inconsistent with this right of travel and improvement. The subject is considered anew as to such highways in the case of Schaaf v. C. M. & S. Elec. Ry. Co., 66 Ohio St., 215, reported contemporaneously with this case, where it is held in substance that an interurban railroad on the side of a country highway, to be constructed and operated in the manner therein described, is an additional burden and an interference with the right *173 of the owner of abutting lands, and that such owner is entitled to an injunction to prevent the construction until such right has been legally appropriated; and it is unnecessary to do more here than to refer to that case. It is, however, insisted that even if it be conceded that, as to country highways, the abutter is the owner of the fee to the middle of the road, and therefore has peculiar rights therein, yet rules applicable to such a situation will not apply to the case of city streets, where, under the statute, the fee is in the city. No special finding appears in the record as to the dedication of Bryden road and Irvine street, but it is presumed that Parsons’ addition was platted and recorded in accordance with the statute. The statutory provision respecting the effect of such dedication is found in section 2601, Revised Statutes, and is a substantial reproduction of the provision of section four of the act of March 3, 1831, S. & C., 1483. It is as follows: “And thereupon the map or plat so recorded shall be deemed a sufficient conveyance to vest in the municipal corporation the fee of the parcel or parcels of land designated or intended for streets, alleys, ways, commons or other public uses, to be held in the corporate name in trust to and for the uses and purposes in the instrument set forth and expressed, designated, or intended.” It seems plain that the effect of the provision is not to vest in the municipality a fee simple absolute in the streets, but only a determinable or qualified fee, and that what is granted to the city is to be held in trust for the uses intended, viz.: for street uses, and street uses only. Such title would be adequate to clothe the municipality with power to fully perform its statutory duty toward such streets, viz.: to keep the same open, in *174 repair, and free from nuisance, and for all incidental street purposes. The limitation upon the title necessarily implies that there is a substantial interest not conveyed. Naturally it would be presumed that the right of reverter would remain either in the original proprietor, or would pass to and vest in the owners of the abutting lots. That, as between these two classes,, the interest is in the owner of the abutting lots, was held by this court in Stephens v. Taylor, Exr., 51 Ohio St., 593, where a street had been vacated by the city and the question presented was whether the fee reverted to the heirs of the original owner who dedicated the street, or to the owners at the time of the vacation of the lands abutting. No report of the case was made by this court, but it will be found fully reported by the circuit court, opinion by Shearer, J., in 6 C. C. R., 142. The same principle is announced in The Kinnear Mfg. Co. v. Beatty, 65 Ohio St., 264. That this interest is a private right of the nature of an incorporeal hereditament legally attached to the contiguous grounds and the erections thereon, has been so frequently held by this court that extended repetition would not be a justifiable use of space. It suffices to refer to Crawford v. Delaware, 7 Ohio St., 459, 469; Street Ry. Co. v. Cumminsville, 14 Ohio St., 523; Railway Co. v. Lawrence, 38 Ohio St., 41. It would seem to follow from the foregoing that, for practical purposes, there is no substantial difference in the right of the owner of lands abutting upon a country highway in such highway and that of the owner of a lot abutting on a city street in such street. In the one case, where the fee is in the landowner his rights in and over the streets are in their nature legal, while if the fee be in the public, the lawful *175 rights of the abutting owners are in their nature equitable easements. In both situations the right of the public is for road or street purposes, and is necessarily limited to such control as is necessary to accomplish those purposes. As to country highways that object is accomplished ordinarily by securing free passage for travel and reasonable maintenance and repair, while as to city streets the necessary uses and consequent control is the same, viz.: for street purposes. The question has been a subject of much contention and of contrary decisions, but the conclusion above stated is, we think, supported by the better reason as it is by abundant authority? See Dillon’s Munic. Corp., Secs. 656a, 656b and 664a; Story v. N. Y. Elev. R. R. Co., 90 N. Y., 122; Lahr v. Met. Elec. Ry. Co., 104 N. Y., 268, and.authorities there cited; also Barney v. Keokuk, 94 U. S., 324; and Railway Co. v. Lawrence, supra.
It would be idle now to discuss at length the character of this right of the owner of abutting land in the street. By repeated adjudications it is declared to be a right which attaches to his property, and, as expressed by Swan, J., in the Delaware case, supra, and quoted .by Ranney, J., in the Cumminsville case, supra, and by White, J., in the Lawrence case, supra, is. “as much property as the lot itself.” And if, as held by these adjudications, the owner’s right in the street is to be treated as property, the only remaining question is whether or not the acts of the defendant complained of constitute, in an essential degree, a taking of that property within the meaning of the constitution. And here we inquire what is meant by the word “property?” If, as was once understood, and is still understood by some, it means only a corporeal *176 thing, as a horse or a piece of land, then a negative answer to the question would seem to follow. If, however, the true meaning is the right of property in and dominion over the specific thing, then we would seem to he led to a different answer. That the latter meaning is the true one appears now to be the settled doctrine. Under this definition the word “property” is held to denote certain rights in things which pertain to persons and which are created and sanctioned by law. They are, as stated by one writer, “the right of user, the right of exclusion and the right of disposition * * *. A person’s right of property in things, therefore, consists of the right to possess, use and dispose thereof in such manner as is not inconsistent with law.” Lewis on Eminent Domain, section 54, and authorities cited. As put by Shaw, C. J., in Railroad v. Plymouth, 14 Gray, 161; “The word ‘property’ in the tenth section of the bill of rights, which provides that whenever the public exigencies require that the property of any individual shall be appropriated to public uses, he shall receive a reasonable compensation therefor, should have such a liberal construction as to include every valuable interest which can be enjoyed as property and recognized as such.” And that this is the meaning intended by the previous adjudications of this court which have been cited, we think there can be no reasonable doubt.
Coming now to the question of taking, it is to be admitted that it has been held necessary to the idea of a taking that there must be an exclusive appropriation, a physical, tangible appropriation of the property of another, a taking the property altogether. This is the doctrine announced in Hurt v. Atlanta, *177 100 Ga., 274, and some other cases. But the rule more frequently held, and, we think, the more enlightened rule, is that this limitation of the term “taking” to the actual physical appropriation of the corpus is too narrow a construction to meet the demands of justice, and that, from the very nature of the right of user and exclusion, it is evident that they cannot be materially abridged without necessarily taking the owner’s property, for, if the right of user is an essential element of ownership, then whatever physical interference annuls this right takes property. See Lewis on Em. Dom., supra, Sec. 58; Pearsall v. Supervisors, 74 Mich., 558; Grand Rapids, Bg. Co. v. Jarvis, 30 Mich., 308; Eaton v. B. C. & M. R. R., 51 N. H., 504; Thompson v. The River Co., 54 N. H., 545; Arimond v. Canal Co., 31 Wis., 316. The doctrine is not better stated than by the Supreme Court of the United States, opinion by Mr. Justice Miller, Pumpelly v. Green Bay Co., 80 U. S. (13 Wall.), 166, in discussing the law of eminent domain: “The constitutional provisions of the United States and of the several states which declare that private property shall not be taken for public use without just compensation, were intended to establish this principle beyond legislative control. It is not necessary that property should be absolutely taken, in the narrowest sense of that word, to bring the case within the protection of this constitutional provision. There may be such a serious interruption to the common and necessary use of property as will be equivalent to a taking within the meaning of the constitution.”
And when we hold, as we do, that the property interest which is here defined is protected by the constitution, article one, section nineteen, which pro *178 vides that private property shall ever be held inviolate, and when taken for public use, except in time of war or other public exigency, compensation therefor shall first be made in money or first secured by a deposit of money, as well as by section five of article thirteen, which provides that: “No right of way shall be appropriated to the use of any corporation until full compensation therefor be first made in money, or first secured by a deposit of money,” etc., we but follow the law as laid down by our predecessors in the cases cited and followed in many adjudications in more recent years. And if the owner’s right in the street be property, as hereinbefore defined, and as such is protected by the constitution, it inevitably follows that the attempt by a private corporation, in order to accomplish its own private business purposes, to invade that right by placing in the street in front of the lot permanent erections which will, in any appreciable degree, impair the owner’s access to the lot, or otherwise interfere with the full enjoyment of the lot for all purposes to which it is adapted, or of the street itself, such an invasion is an attempted taking; it is a diversion of the use of the street from the purposes originally designed for it, and if it can be taken at all as against the will of the owner, it must be upon the terms prescribed by the constitution. To the Ohio decisions already cited may be added as bearing generally on the subject: Railway Co. v. Tel. Assn., 48 Ohio St., 390; Railway Co. v. Campbell, 51 Ohio St., 328; Daily v. State, 51 Ohio St., 348; Kramer v. Railway Co., 53 Ohio St., 436. Also Craig v. Railway Co., 39 N. Y., 404; Dillon’s Munic. Corp., Sec. 698a; Backus v. Detroit, 49 Mich., 110; Pierce on Railroads, 241; Broome v. N. Y. *179 & N. J. Tel. Co., 42 N. J. Eq., 141; Palmer v. Larch Mont. Elec. Co., 158 N. Y., 231; Carpenter v. Cap. Elec. Co., 178 Ill., 129; Haverford Elec. Light Co. v. Hart, 1 Pa. Dist. Rep., 571; Tiffany v. U. S. Ill. Co., 51 N. Y. Sup., 280; Croswell’s Electricity, Sec. 126, and Lewis’ Em. Domain, Sec. 131.
Nor can it avail defendant that the city of Columbus has given consent to its use of these streets — and we do n*. t undertake to determine here whether such consent has or not been legally given — for the city has and can have no power to legalize or sanction such taking. The electric lighting by defendant is not of the streets and for the city; it is wholly for private use; hence it is a private purpose and is not a street purpose in any aspect of it. Its use of these streets is not such as was contemplated by the original dedication. On the contrary, the maintenance of its structures devolves new burdens upon the land, burdens calculated to materially impair the rights of the owner in the street. The plaintiff’s evidence tends to show that the impairment of the value of plaintiff’s lot would be serious, and no evidence was offered by defendant to the contrary. If the company has the right to plant two poles, with nine electric lines or wires, it has by the same authority, the right to plant twenty poles with ninety wires. It is a question of right, and right only. We are not required to determine whether the impairment will be much or little. If it is appreciable in character and amount, the plaintiff is entitled to relief.
Nor is the defendant’s contention aided by its contract with the city for the placing of the fire alarm box upon its iron pole. The finding shows that such pole is not necessary for the city’s use, and that a post *180 much less objectionable in character, or a pole maintained at a point where it would be likely to cause less obstruction to access, would serve the city just as well. It is to be borne in mind that the city’s control of the streets is confined to street purposes, and is not for general municipal purposes. The distinction is obvious. The primary object of highways is for public travel. As expressed by Dickman, J., in Railway Co. v. Tel. Assn., supra, “the primary and dominant purpose of their establishment was to facilitate travel and transportation.” Whatever is a necessary incident to that use, the city may provide. Sewers, for instance, drain the surface water and thus relieve the streets from impairment and destruction, and in this respect sewers are for a street purpose; while, in addition, they may drain abutting property, thus tending to promote the public health, and in this respect they serve a municipal purpose. The same may be said as to water supply for cleansing and sprinkling the streets, and by owners of property abutting for cleaning and domestic uses, and for the extinguishment of fires. Light, also, is necessary for street purposes, and is convenient for the use of citizens, thus serving two uses, one a street purpose and the other a municipal purpose. But a fire alarm apparatus is strictly a municipal convenience; it does not enter necessarily into the control of streets. So it would seem that the city’s right to maintain a pole for fire alarm purposes may not be entirely clear, although we are not called upon in this case to pass upon that question, and do not undertake to do so.
The right of the abutting owner to the unimpaired use of the street and to be compensated for new and additional burdens imposed by diversion of the street *181 to new uses, is recognized and enforced by a number of sections of our Revised Statutes which, without quoting their provisions, are here cited for reference, viz.: Sections 3456, 3457 and 6448. They are cited only as showing a legislative purpose to conserve the rights of abutting owners.
From the foregoing it results that the conclusion of law found by the circuit court is an erroneous one; that the holding of the common pleas is, under the admitted facts, the true rule, and that the plaintiff is entitled to the remedy accorded by the latter court. A judgment for plaintiff will, therefore, be entered here perpetually enjoining the maintenance of the poles and wires complained of and a mandatory injunction ordered requiring their removal.

Judgment accordingly.

Williams, C. J., Btjrket, Davis and Pkice, JJ., concur.