VILLAGE OF CATTARAUGUS, Appellant, *v.* FRED E. JOHNSON, Respondent.

County Court, Cattaraugus County, February 26, 1931.

*Herman Lavery,* for the appellant.
*Albert A. Bird,* for the respondent.

BLACK, J. The action is brought by the village to recover a ten-dollar penalty under village ordinance No. 41, which reads as follows: " No person shall in any manner injure or destroy any shade tree in the streets or parks of the village; nor hitch any team, horse, or other animal, at or to such shade tree, or near enough thereto so that such shade tree may be injured thereby, under a penalty of ten dollars for each and every offense."

The facts were stipulated in Justice Court as follows: " It is stipulated on the record in the trial of this action that the following are the facts:

" That the plaintiff is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York, as set forth in the complaint.

" That Village Ordinance No. 41 of the Village of Cattaraugus, as the same is set out in the complaint herein was legally adopted by the Board of Trustees of said Village about the 9th day of February, 1925, and became effective as an ordinance of said Village on the 25th day of February, 1925, and the same has not been amended or repealed, and was in force and effect at the time of the cutting of the tree as alleged in the complaint.

" That the defendant is the owner of certain premises jointly with his wife Louise B. Johnson, situated at the corner of Washington and Ellicott streets in said Village of Cattaraugus, more particularly described in a certain deed dated October 6th, 1890, executed by Carlton E. Derby and Addison Austin as executors of the last will and testament of Sylvester M. Cox to the defendant Fred E. Johnson, and recorded October 9th, 1890, in Liber 146 of Deeds at page 187 in the Cattaraugus County Clerk's office. That the title of the defendant and his wife Louise B. Johnson to the lands therein described extends to the center of Washington street on the north, and to the center of Ellicott street on the east.

" That there was growing upon said lands within the limits of the highway known as Washington street, immediately adjacent to the sidewalk four maple trees upwards of seventy-five years of age, planted by the defendant's grantors, and which had been growing there upwards of fifty years, one of which trees is the one mentioned in plaintiff's complaint.

" That upwards of twenty years ago said tree began to show evidences of decay, and defendant about fifteen years ago, procured the services of a Davy tree specialist to treat said tree for the purpose of preserving the same, and at considerable expense to him, had the rotting portions of said tree removed, and the space filled with cement in accordance with the Davy treatment.

That since said treatment portions of said tree continued to die, and in the winter of 1929 and 30 by reason of a severe sleet and ice storm, many of the branches were broken off from said tree.

"That about the month of April, 1930, defendant and his wife procured the services of a tree expert by the name of Fredericks, who resides at Gerry, Chautauqua County, New York, to trim various trees belonging to defendant and his wife on said premises including the tree involved in this action.

"That said Frederick informed defendant and his said wife that the tree could not be saved and that it ought to be cut down as it was dangerous to the passing public along the said street. That the cables of the Niagara, Lockport and Ontario Power Company which has a franchise within the Village of Cattaraugus to light the streets and distribute electric current to the inhabitants of said Village were strung along said street near said tree, and said Fredericks advised defendant that it would be difficult to take down the tree, without injury to said cables, and that he would see the representatives of said power company about their removing the tree.

"That on the night before the removal of said tree, when deponent went to bed said tree was standing, and when he got up the next morning said tree was cut down and nearly cut up. That although defendant did not cut down said tree or direct it to be cut down he assumes all responsibility for the same to the same extent as if he had given express directions to have the same cut.

"That defendant believes that said tree by reason of its condition was dangerous, and he intended and expects to plant another tree in its place. That said tree was cut without the consent or knowledge of the Board of Trustees of said Village or the Street Commissioner thereof."

The ordinance in question, it will be noted, relates to *shade trees*. Section 90* of the Village Law, under which the ordinance was enacted, gives the board of trustees power to enact, amend and repeal ordinances for the purposes thereinafter specified. Subdivision 8 of said section 90 provides as follows:

"8. *Shade* trees. To protect and preserve *shade* trees in the streets and public places, and prevent the hitching of horses to such trees."

It is evident that the purpose of this section of the Village Law and ordinance which was enacted under it by the village of Cattaraugus was to preserve *shade* trees which were located in

* Repealed and new section 90 added by Laws of 1927, chapter 650. Provision relating to shade trees is omitted in the new section.— [REP.

public places, so as to preserve their beauty for public enjoyment. Under the stipulation entered into between the parties, the tree which was cut by the defendant was not a *shade* tree within the commonly accepted meaning of that term. The tree was decayed, badly injured by storm, and dangerous to the traveling public. Instead of being a *shade* tree, it was a decayed tree and a menace to the traveling public. If defendant had permitted it to stand after being informed of its condition by experts, he might have become liable for damages to parties suffering injuries. This alone would justify the affirmance of the judgment of the Justice Court. Whatever question of law is involved as to the cutting of a *shade* tree has been stipulated out of the case.

The attorneys for both the village and the defendant have filed exhaustive briefs upon the questions of law involved in cutting of a *shade* tree. The trustees and public are interested. The court, therefore, I believe in this case — although it is not strictly necessary for its decision — should express its views on this question, so that the point may be settled as to future procedure on the part of the village, or that it may be reviewed upon appeal.

The stipulation of the facts show that the village ordinance was adopted by the board of trustees February 9, 1925, and became effective February 25, 1925; that the defendant is the owner of certain premises jointly with his wife, Louise B. Johnson, situate at the corner of Washington and Ellicott streets in the village of Cattaraugus, more particularly described in a certain deed dated October 6, 1890, executed by Carlton E. Derby and Addison Austin, as executors of the last will and testament of Sylvester M. Cox, to the defendant Fred E. Johnson, and recorded October 9, 1890, in liber 146 of Deeds at page 187, in Cattaraugus county clerk's office. That the title of the defendant and his wife, Louise B. Johnson, to the land therein described extends to the center of Washington street on the north and to the center of Ellicott street on the east; that there was growing upon said lands within the limits of the highway known as Washington street, immediately adjacent to the sidewalk, four maple trees upwards of seventy-five years of age, planted by the defendant's grantors, one of which trees is the one mentioned in plaintiff's complaint. This tree was planted before the village was incorporated.

The defendant owns the title in fee to the center of the street. This is a different situation than if the defendant was, strictly speaking, an " abutting " owner; that is, his title running merely to the boundaries of the street. In cases where a lot owner has title in fee to the center of the street, it is well settled by abundant authority in this State that the only title or right which the munici-

pality has is an easement for the construction and maintenance of the street. They have no right to interfere with shrubbery or trees or any other part of the freehold lying within the boundary of the street, except when the same interferes with the proper use of the village for street purposes. The authority of the village is paramount when it is necessary to use the land for street purposes. What are street purposes is pointed out in the case of *Palmer* v. *Larchmont Electric Co.* (158 N. Y. 231 at p. 235) which says: "The primary object of highways is for the public travel by persons and animals and by carriages or vehicles used for the transportation of persons and goods, other than by railroads. Sewers drain the surface water from the highways, and thus relieve them from impairment and destruction. In this respect sewers are for a street purpose. In addition, they may drain also the abutting property and houses, and thus tend to promote the public health. In this respect they are for a municipal purpose. Water supplied by mains through the highway may be used for cleansing and sprinkling the streets. In this respect it is for a street purpose * * * Light is, as we have seen, an aid to the public in the night time in traveling upon the highway. It is, therefore, used for a street purpose. All of the street purposes which we have referred to are clearly incident to the highway and are deemed within the grant of lands for highway purposes whenever the necessity for these uses arises. Not so with telegraph and telephone poles. They in no way preserve or improve the streets or aid the public in traveling over them."

*Osborne* v. *Auburn Telephone Co.* (189 N. Y. 393) is another case in which the owner of the property held title to the center of the street. The city had given the telephone company a franchise to use the streets for the erection of poles, etc. Judge HAIGHT states (p. 396): "We here have first an absolute conveyance to the plaintiff of the fee of the north half of Fitch avenue. Then follows a reservation for a road which had then been opened to the public. We think that this conveyance operated to vest in the plaintiff the fee, subject, however, to the easement of the public thereon for the purpose of a road or highway. (*Myers* v. *Bell Telephone Co.*, 83 App. Div. 623.)"

The court then goes on to say that the question presented is whether the erection and maintenance of telephone and telegraph poles in the street are an additional burden upon the fee for which compensation must be made to the owner, or whether it is a street purpose, and decides that it is an additional burden. The telephone company has no right to place its poles on the plaintiff's land without his consent. The court, after quoting at length

from the case of *Palmer* v. *Larchmont Electric Co.*, referred to above, as to what constitutes street purposes, says: " But the use of the street for municipal purposes or individual purposes independent of its use for street purposes, is an additional burden upon the fee, not included in the grant of lands for highway purposes. We are aware that in recent years our highways and streets have been appropriated for municipal and individual uses in many instances. Subways, conduits and pipe lines, * * * for * * * steam and other products, for other than street purposes. *Cities which own the fee in the streets* may contract, lease or grant their use for public or municipal purposes not inconsistent with nor prejudicial to the public easement or use for street purposes. In such cases, the fee having been transferred to the municipality, it can grant rights in the street other than for street purposes which do not impair the public easement. We, therefore, cannot recognize the uses to which highways have been subjected in recent years as changing the law or the property rights of individuals."

In the case of *City of Buffalo* v. *Pratt* (131 N. Y. 293, at p. 299) Judge Gray, writing the opinion, says: " It is unquestionable, however, that the ownership of the fee of the land in the street has a substantial value to the abutting property holder, in the degree of control it gives to him over the uses to which the street may be put. It vests him with the right to defend against and to enjoin the use of, or an encroachment upon, the street, under legislative or municipal authority, for purposes inconsistent with those uses to which streets should be or have ordinarily been subjected; unless just compensation is provided to be made. The ownership of the land in the street was subject only to the public easement therein as a highway. In the absence of such a provision for compensation, the taking of the street for some new, or additional and inconsistent use would be illegal. But, if the abutting property owner does not own the fee in the land of his street, he has no such right to compensation and is remediless against the taking of the street under legislative or municipal sanction for other uses; except such other uses be unreasonable and, in their nature, so improper as to obstruct a free passage upon the street; or to amount to a nuisance; or to deprive him of the enjoyment of easements of light, air and access."

In the case of *Robert* v. *Sadler* (104 N. Y. 229, at p. 233) Judge Finch, writing the opinion of the court, says: " It is perfectly well settled that in a case like the present the public acquired only a right of way with the powers and privileges incident to that right (*Jackson* v. *Hathaway*, 15 Johns. 447, 452) and that the owner of the fee retains his exclusive right in all mines, quarries,

springs of water, *timber* and earth, for all purposes not incompatible with the right of way. The question in every case turns upon what is ' incident ' to the construction or maintenance of the right of way."

In *Platt* v. *Village of Oneonta* (88 App. Div. 192) the village laid stones in the soil in front of plaintiff's lot and within the street bounds for the purpose of using them as a permanent sidewalk. The court held that as the owner held title to the center of the street, the stones when laid into the ground became a part of the real property and could not be removed by the village without the owner's consent.

I think it is clear from the above cases that it is the law of this State that where the lot owner's title extends to the center of the street the fee is in the owner of the lot, and the right of the village is paramount only for street purposes. The cases of *St. Mary of the Angels Church* v. *Barrows* (68 Misc. 545); *Lane* v. *Lemke* (53 App. Div. 395) and *Donahue* v. *Keystone Gas Co.* (181 N. Y. 313), referred to in plaintiff's brief, hold no different doctrine. *Donahue* v. *Keystone Gas Co.* passes upon the right of an abutting owner to recover from a third party for destruction of a shade tree in the street in front of his premises where his title does not run to the center of the street, and holds that the abutting owner has property rights in such tree.

It is not claimed by plaintiff that the cutting of the tree did interfere with the use of the street, or that the ordinance was designed to protect the street, but that the village had a right to recover the penalty for two reasons; one, that the statute under which the ordinance was enacted was sufficiently broad to include recovery of penalty against the owner who cut his own tree; and the other that the village had such right under its general police power.

The defendant cites the case of *Village of Lancaster* v. *Richardson* (4 Lans. 136), which is a decision of the General Term of the Supreme Court, Fourth Department, 1871, which held that the village could not recover a penalty against an owner to the center of the street for cutting a tree on his own property. The plaintiff claims that under the General Village Law the statute has been so changed that that case has no application. The village of Lancaster was incorporated under a special act (Laws of 1859, chap. 320). The facts were similar to those in the present case, although it does not appear if the tree was planted before or after the street was laid out. The opinion indicates it was after. This special act, section 48, reads as follows:

" The trustees shall have power, in their discretion: * * *

" 12. To prevent the injury or destruction of shade trees planted along the streets and sidewalks in said village, and to encourage the planting and growth of such shade trees, by commutation for highway labor, as they shall by by-laws or otherwise direct."

On October 19, 1867, the trustees of the village of Lancaster passed a by-law as follows: " *Resolved*, that no person shall willfully cut, mar, or otherwise injure, or cause to be injured, any shade tree planted or growing along the streets of the village of Lancaster, or hitch any horse or other animal thereto, under penalty of five dollars."

In the court's opinion it is said: " A law that would place trees, planted for the purpose of ornament or shade in a public street or highway, under the care of public officers charged with the care of streets, and secure them against injury done by the owner or other person by proper penalties, would be a very wholesome and just exercise of legislative power.

" There would be no injustice in treating the planting of the trees in a street or highway as an appropriation of them to the public use for the purpose of ornament or shade, and prohibiting either the owner or the public officers from removing them without the consent of the other. But, until such legislation is provided, trees planted in the streets or highways must be deemed the property of the owner; and all by-laws passed for the protection of such trees can apply only to other persons."

The Village Law, section 90, subdivision 8, in force at the time this ordinance was adopted, reads as follows: " The board of trustees has power to enact, amend and repeal ordinances for the following purposes: * * *

" 8. Shade trees. To protect and preserve shade trees in the streets and public places, and prevent the hitching of horses to such shade trees."

The ordinance adopted by the village board in this case became effective February 25, 1925, and reads as follows: " No person shall in any manner injure or destroy any shade tree in the streets or parks of the village; nor hitch any team, horse, or other animal at or to such shade tree, or near enough thereto so that such shade tree may be injured thereby, under penalty of ten dollars for each and every offense."

I can see no difference between the power given the village board under the Village Law from that given under the special act incorporating the village of Lancaster, referred to above. The fact that the village of Lancaster was under a special act makes no difference. There is nothing in the section of the Village Law which attempts to appropriate the title to trees or to deprive

the owner of any right which he formerly had in the trees. No other law has been pointed out applicable to the village of Cattaraugus which has changed the rights of the parties since the decision of the *Village of Lancaster* case above. The village board has no greater authority than is given it by the act of the Legislature creating it.

The village claims that the ordinance in question is a valid exercise of police power. This question is discussed under point 3 of appellant's brief, in which it is pointed out that in many instances in the exercise of police power, private property rights are interfered with for the benefit of the public welfare. The appellant calls attention to the fact that the nature and scope of police power is stated in the case of *People ex rel. Publicity Leasing Co.* v. *Ludwig* (218 N. Y. 540). This last-mentioned case refers to the principles laid down in the case of *People ex rel. Wineburg Adv. Co.* v. *Murphy* (195 N. Y. 126), in which the court says (at p. 131): " The police power, so difficult to define, but so frequently invoked, is confined to such reasonable restrictions and prohibitions as are necessary to guard public health, morals and safety and to conserve public peace, order and the general welfare. Regulations and ordinances within such general definition are valid."

At the bottom of page 133 the court quotes from *Bryan* v. *City of Chester* (212 Penn. St. 259) as follows: " A municipality has no power to enact an ordinance forbidding citizens to erect billboards on their own property merely because such boards are unsightly, or *may* create a nuisance * * *. All statutory restrictions of the use of property are imposed upon the theory that they are necessary for the safety, health or comfort of the public; but a limitation without reason or necessity cannot be enforced."

Again, at page 135, the court, quoting from a New Jersey case, says: " Aesthetic considerations are a matter of luxury and indulgence rather than of necessity, and it is necessity alone which justifies the exercise of the police power to take private property without compensation."

If this ordinance means that a person could not cut down a tree on his own premises, it cannot be said that it is confined to such reasonable restriction as is necessary to guard public health, morals and safety, or to secure public peace, order and the general welfare. If it is based on the theory that a tree gives shade and tends to increase the health of the community, then there is no reason why the same ordinance should not apply to trees on any private property, whether within the street limits or not. Police power, if founded upon correct principles, is not limited to streets or public property, but reaches all offending private property.

It is true that more and more statutes are being enacted giving municipalities control over shade trees within the streets or highways. That is indicated by some of the cases cited by appellant in the latter part of point 3 of its brief. But, until there is some specific law appropriating the trees to the municipality, individual rights cannot be encroached upon. As was said in *Osborne* v. *Auburn* (189 N. Y. 393, at p. 397): "*We, therefore, cannot recognize the uses to which highways have been subjected in recent years as changing the law or the property rights of individuals.*"

Among other cases cited by appellant is *Baker* v. *Town of Normal* (81 Ill. 108). In that case the owner of property was held liable for damage caused by the owner hitching a horse to a shade tree in front of his own premises. It does not appear from the quotation in this case whether the owner had the fee to the center of the street or not. It was evidently not a case of the same facts as this, as the court said: "The planting of a shade tree in the street by a citizen, by permission of the village or city authorities is a gratuity to the public, and the citizen has no more right to control the shade tree so planted than he would have had it been planted by the city authorities." Evidently there was such authority exercised over the streets by the municipality that permission of the officials had to be obtained for the planting of the tree. The appellant also quotes at length from the case of *County of Santa Barbara* v. *More* (175 Cal. 6). Evidently that decision was made under some specific statute of California prohibiting the owner from cutting trees in the highway. The first sentence of the quotation from this case reads as follows: "Whatever may have been conceived to have been the right of the property owner to destroy such trees in the absence of legislation upon our books, of that right by such legislation he is absolutely deprived, unless it can be successfully said that in depriving him of that right the state has taken his property without process of law."

They then go on to discuss the case, and hold that the act of the Legislature was not unconstitutional. The appellant also quotes from the case of *Chesapeake & Potomac Telephone Co. of Baltimore City* v. *Board of Forestry* (125 Md. 666). That case was also based on some statutory enactment. The last sentence quoted reads: "The authority of the Legislature to make reasonable provision for the protection of highway easements cannot be seriously disputed." The court sustained the enactment, which evidently prohibited cutting down of trees in the highway upon the grounds that by so doing a person might injure the highway or cause danger or delay to those using it. That decision is based on the right of the municipality to exercise authority for street purposes. This

is not the question here. This Maryland case in two particulars differs from the present case: *First*, this ordinance does not prohibit the cutting of a tree or require the giving of notice to the village officers before cutting the tree in order to protect the street, etc., but, as will be seen by the law and ordinance itself, the ordinance is to prevent injury and destruction of shade trees; and, *second*, the Maryland case is based on a particular statute prohibiting the particular act, which we do not have in this case. Appellant also refers to section 344 of the Highway Law, which refers to penalty for destroying or injuring trees in a public highway, and argues that the section is broad enough to include the act of the owner of the fee in cutting down a tree in front of his premises. Under this section, in the notes, is cited the case of *Village of Lancaster* v. *Richardson* (4 Lans. 136), relied upon by defendant, and referred to above. There is another section of the Highway Law which refers to ownership of trees. That is section 333 (as amd. by Laws of 1922, chap. 371). The first part reads as follows: " All trees standing or lying on land within the bounds of any highway, shall be for the proper use of the owner or occupant of such land, except that they may be required to repair the highways or bridges of the town but no growing tree planted by the state or any county or town within the bounds of a state or county highway shall be cut down or destroyed without the written consent of the State Commissioner of Highways." This part of section 333 recognizes the right of an owner to cut down a tree in the highway, except where it is planted by the State or other municipality. The latter part of the section refers to rights of way obtained for the construction of State or county highways, and says: " the owner of the fee shall have and may harvest for his own use the fruit upon all fruit-bearing trees left standing from time to time within the right of way so acquired, until forbidden in writing, etc." This might be construed to put the supervision and control of trees on the State and county highways in the municipality. This shows a tendency to exercise more authority by the municipality over trees in rights of way of improved roads, but has no application to villages. The village streets are entirely within the control of the village board. Section 64 of the Highway Law says that the town superintendent shall have full control of all shade trees in the public highways of the town, but not within the limits of an incorporated village. These laws are interesting in showing the modern trend, but are not applicable to the case in question.

The appellant also calls attention to section 167 of the Village Law in regard to trimming trees, which gives the board of trustees

power to require owners to trim their trees and upon default may cause the trees to be trimmed and the expense assessed upon the adjoining land. Such authority might be necessary to protect electric light wires that furnish light to the street, which the Court of Appeals has held is a street purpose. Whether it could be enforced against the owner of the fee where no right to the use of the street was involved would be a question. There is nothing in this statute or any other that takes away any ownership or title in the trees vested in an individual.

I have, therefore, reached the conclusion that where the owner has title in fee to the center of the street and the tree is not planted in the street under some law which makes the planting a dedication to the municipality (as in this case), the title in fee to the trees is in the owner, and there is nothing in the statute that gives the village board authority to penalize the owner for cutting down his own tree. This would not apply if the village owned the fee of the street. The abutting owner would then have no right to cut down the tree, as the title to the tree would then be in the village, and not in the owner. This distinction should be clearly kept in mind and brought to the attention of property owners by the officers of the village. I think that a village board might properly pass an ordinance prohibiting even an owner in fee from cutting down a tree without first notifying the village authorities, so as to give them an opportunity to supervise the cutting of the tree in order to protect the streets and the traveling public upon it. But that is not the question here. That distinction as to the nature of the ordinance must be kept in mind in considering the arguments of the parties here.

Judgment affirmed, with twenty-five dollars costs.