David Getzoff, J.
The plaintiff brought this action to recover the sum of $4,364 paid to the defendant under protest, said sum being the cost for removing part of a concrete bank or vault, conduits and ducts containing electric cables, to enable plaintiff to connect a sewer line from a building erected by plaintiff, to the city sewer.
In 1923 Consolidated Telegraph & Electrical Subway Co. made application to the City of New York, Department of Water Supply, Gas and Electricity, Borough of Manhattan, for a permit to construct electrical subways on.the west side of Avenue A from southwest 60th Street to southwest 92nd Street and filed plans with said application.
On May 12,1923, the City of New York, Borough of Manhattan, Commissioner of Public Works, issued permit No. 111893 to said company to open the pavement of Avenue A from the south side of 61st Street to the south side of 62nd Street to lay a main conduit.
A concrete bank or vault to contain the conduits, ducts and cables, was completed by defendant’s predecessor on October 20, 1923 and approved by the New York City Department of Water Supply, Gas and Electricity Borough engineer, as to location, size and number of conduits.
On March 20, 1928, Avenue A in the area involved, and south thereof, was renamed York Avenue.
Subsequently, by statutory merger, the Consolidated Telegraph & Electrical Subway Co. became part of the Consolidated Edison Co. of New York, Inc., which corporation assumed all of the assets, rights and liabilities of Consolidated Telegraph & Electrical Subway Co.
*91 In 1960, plaintiff acquired property on the southwest corner of 62nd Street and York Avenue, running 100 feet west on 62nd Street and 100 feet south on York Avenue, upon which it erected a 19-story apartment building.
Plaintiff did not dig test pits to determine the location of any subsurface structures either on the York Avenue or 62nd Street sides of its property prior to drawing the plans for said building.
In attempting to connect the sewer line from the building to the city sewer on York Avenue, plaintiff ascertained that the concrete vault or bank containing conduits, ducts and cables, was parallel with and between the building line and the city sewer.
Plaintiff could not connect to the city sewer on 62nd Street or York Avenue, due to the cellar of the building constructed by plaintiff being below the level of the city sewers, as a result of which plaintiff could not comply with the city departmental codes requiring gravity emptying of the building sewer line into the city sewers, unless part of the concrete vault or bank and the conduits and cables were removed to permit the sewer line from the building to be connected to the city sewer.
Plaintiff negotiated with defendant for the removal of part of its underground facilities and agreed to pay the cost thereof under protest, to enable the connecting of the sewer line from the apartment building to the city sewer on York Avenue without changing the plans for the erection of said building.
Plaintiff makes no claim of title to the bed of the street or any part east of its building line, nor that the construction and maintenance of the concrete vault or bank and the conduits and ducts, violate any rules, regulations or statute.
Plaintiff contends that, as an abutting owner, it had an inherent right to use the city sewer, and the construction and maintenance by the defendant of its afore-mentioned facilities where it was located, was in violation of its rights.
Defendant’s predecessor was, and defendant is, a transportation corporation as classified under subdivision 1 of section 2 and defined under section 10 of the Transportation Corporations Law. Defendant’s powers are set forth in subdivision 3 of section 11 thereof as follows: ‘ ‘ An electric corporation and a gas and electric corporation shall have power to generate, acquire and supply electricity for heat or power in cities, towns and villages within this state and to light the streets, highways and public places thereof and the public and private buildings therein, and to make, sell or lease all machines, instruments, apparatus and other equipment therefor, and for transmitting and distributing electricity to lay, erect and construct suitable *92 wires or other conductors with the necessary poles, pipes or other fixtures in, on, over and under the' streets, avenues, public parks, and places in such cities, towns or villages, with the consent of the municipal authorities thereof, and in such manner and under such reasonable regulations as they may prescribe. ’ ’
The fee to the area in question was in the city.
Defendant received its franchise and permit to lay and maintain its facilities under the surface of York Avenue, from the City of New York in 1923. It could be maintained unquestionably if used for a street purpose. (Transportation Corporations Law, former § 61, subd. 2; now § 11, subd. 3; Cooperstone v. Brooklyn Edison Co., 128 Misc. 216.)
In Kane v. New York El. R.R. Co. (125 N. Y. 164,175-176) the court explored the respective rights and stated: ‘ ‘ Under the decisions made there seems to be no longer any doubt in this state that streets in a city laid out in open under charter provisions, may, under legislative and municipal authority, be used for any public use consistent with their preservation as public streets, and this, although the use may be new, and may seem to impose an additional burden, and may subject lot owners to injury, the mere disturbance of their rights of light, air and access, by the imposition of a new street use, must be borne and gives no right of action.”
“ The city owned the fee of the street in trust for the public and having lawfully granted a franchise to use the street for a quasi-public purpose, it could not derogate from that grant, especially when making another for a mere private purpose.” (New York Steam Co. v. Foundation Co., 195 N. .Y. 43, 51.)
In Palmer v. Larchmont Elec. Co. (158 N. Y. 231) the plaintiff, whose fee extended to the center of the highway, subject to the easements of the public therein, brought action to compel defendant to remove its poles and wires from in front of plaintiff’s premises. In denying the application, the court stated (p. 235): “ The primary object of highways is for the public travel by persons and animals, and by carriages or vehicles used for transportation of persons and goods, other than by railroads. Sewers drain the surface water from the highways, and thus relieve them from impairment and destruction. In this respect sewers are for a street purpose. In addition, they may drain also the abutting property and houses and thus tend to promote the public health. In this respect they are for a municipal purpose.” (See, also, Witcher v. Holland Water-Works Co., 66 Hun 619, affd. 142 N. Y. 626; People ex rel. Woodhaven Gas Light Co. v. Deehan, 153 N. Y. 528; Osborne v. Auburn Tel. Co., 189 N. Y. 393.)
*93 In Western N. Y. & Pa. Traction Co. v. Stillman (143 App. Div. 717) the plaintiff sought to enjoin the defendant from moving his house through the streets to another location, contending that it would interfere with its wiring and overhead construction; that it had a vested right in the city streets which the defendant, with the permission of the city itself, could not interfere with. The court in denying plaintiff’s application held that defendant could move his house under a municipal permit upon condition that notice be given to plaintiff; that plaintiff handle the wires and overhead construction by its own employees; that defendant pay all expenses and damages sustained.
With the growth of the City of New York, the above-ground utility equipment was legislated to be maintained subsurface.
In 1960, and for decades prior thereto, it was common knowledge that the subsurface area of the city streets contained city water mains and sewers and in addition thereto a labyrinth of public utility vaults, conduits, ducts, wires and pipes to illuminate the city streets and supply gas and electricity to abutting property.
Defendant had constructed the concrete vault or bank, conduits, ducts and cables, many years prior to plaintiff’s purchasing the lot upon which it constructed the apartment house. Defendant’s facilities were, and are, used for a street purpose, while plaintiff’s use of its property was and is for a purely private purpose.
Defendant herein, being a public utility corporation, has a vested right to maintain its subsurface facilities as approved by the city.
Plaintiff, an abutting owner using the city streets and sewer for private enterprise, has no absolute right in the street-
judgment for defendant.