DAVID H. JAMES, Appellant, *v.* ISAAC SAMMIS et al.,
Respondents.

In an action for alleged trespass in entering upon plaintiff's land in the
town of Huntington, and taking down his fence, the defense was that
the *locus in quo* was part of a public highway which bounded plaintiff's
premises on the south, upon which the fence encroached and that it
was removed by order of the highway commissioners. It appeared
that in 1869, the fence on the south side of the highway which had been
located there for over forty years was moved south, which constituted
the alleged encroachment claimed by the defendants. With a view to
proceedings for removal of the fence under the provisions of the Revised
Statutes (1 R. S. 501–526, §§ 100–103, as amended by chap. 245, Laws
of 1878), which declares that all roads not recorded which have been
used as public highways for twenty years, shall be considered such,
and authorizes proceedings for removal of encroachments, the com-
missioners of highways of the town in 1885, made an order purporting
to define and describe the highway, which with a map thereof, was
made of record in the town. In 1886, the commissioners made an order
describing the alleged encroachment, and directing the removal of the
fence. This order with a notice annexed was served upon plaintiff, and
after sixty days, under direction of the commissioners, the fence was
removed by defendants. It was claimed by plaintiffs that said statutory
provisions were not effectual to support the proceedings, because prior
to 1864, they had no application to the town, it being governed by
special acts (Chap. 14, Laws of 1789; chap. 56, Laws of 1830). These
acts were repealed by the act of 1864 (Chap 514, Laws of 1864), and by
the act of 1865. (Chap. 6, Laws of 1865) the general statutes were
extended to the counties named in said special acts. *Held,* that as at
the time of the encroachment and of said order, the road had been used
as a public highway for twenty years, it was within and subject to said
provisions of the Revised Statutes, that the amendment in 1878, in
reference to the removal of encroachments, merely gave an additional
remedy, which was available although it did not exist at the time of
encroachment.

Also *held,* that prior to said statutes of 1864 and 1865, the provisions of
the Revised Statutes, as they then were, were effectual in the counties
named in the special acts, as they were not in conflict but were con-
sistent with them, and for purposes for which no provision was made in
the local statutes.

Defendants introduced in evidence a paper found among the old records
of the town, purporting to be an order made in 1746, by the town com-
missioners "in pursuance of an order of General Assembly," which
described the highway in question. *Held,* that the order was properly

received in evidence and that it was within the statutory power of the commissioners to make it. (Chap. 575, Col. Laws 1732; chap. 686, Col. Laws 1739.)

It was claimed that the notice served by the commissioners upon plaintiff was defective in that it did not specify the breadth of the road originally intended as required by the statute (1 R. S. 526, § 103, as amended by chap. 245, Laws of 1878). *Held*, untenable; that the order contained it, and as this was annexed to and served with the notice, they practically constituted a single document and this was sufficient; that it was not essential that the specification should appear in both notice and order.

(Argued February 4, 1892; decided March 22, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made May 12, 1890, which affirmed a judgment in favor of defendants, entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles R. Street* for appellant. Where a person using a laid out highway occasionally passes over the land adjoining it, that is not such a use as would make the adjoining land a highway. (*Rozell* v. *Andrews*, 103 N. Y. 150.) There is no evidence in the case sufficient to establish that the premises in question had become a highway by user. (Laws of 1789, chap. 14; Laws of 1830, chap. 56; *People* v. *Quigg*, 59 N. Y. 83.) The act of 1864 repealing the Long Island Counties Act and extending the provisions of the general statutes relating to highways in Suffolk county, had no retroactive effect. (*Williams* v. *Oswego*, 25 Hun, 38; *Carpenter* v. *Skinner*, 24 id. 466; *McCahill* v. *Hamilton*, 20 id. 391; *Dash* v. *Van Kleeck*, 7 Johns. 477; *Sayre* v. *Wisner*, 8 Wend. 661; *Wood* v. *Oakley*, 11 Paige, 400; *Johnson* v. *Burrill*, 2 Hill, 238; *Sanford* v. *Bennett*, 24 N. Y. 20; *Amnsbry* v. *Hinds*, 48 id. 60.) Assuming, for the sake of argument, that the defendants had in some manner shown that the premises in question had become a highway by user at the time of the erection of the fence in 1869, even then the

encroachment proceedings, on which the defendants rely and upon which and their regularity the judgment is based, were unauthorized. (*Talmadge* v. *Huntting*, 29 N. Y. 447; *People* v. *Judges,* etc., 24 Wend. 491; *Davenport* v. *Lambert*, 44 id. 598; *Cook* v. *Cavil*, 18 Hun, 289; *Benton* v. *Wickwire*, 54 N. Y. 226.) Assuming again that the premises in question were a part of the highway, the order of encroachment and notice to remove the same, which were served on the plaintiff, were so defective as to afford no protection to the defendants in the destruction of the plaintiff's fence. (*Cook* v. *Cavil*, 18 Hun, 288; *Mott* v. *Rush*, 2 Hill, 472; *Spicer* v. *Slade*, 9 Johns. 359; *Rozell* v. *Andrews*, 103 N. Y. 150.)

*Henry C. Platt* for respondents. When the General Term has affirmed findings of fact and there is, in any view, evidence to sustain them, the Court of Appeals will not review them. (*Berdell* v. *Allen*, 116 N. Y. 661; *Rutherford* v. *Schattman*, 119 id. 604; *Healy* v. *Clark*, 120 id. 642.) There was a user of this highway, including the portion thereof in controversy, by the public, from the time whereof the memory of man runneth not to the contrary, up to 1869, when the obstruction or encroachment was made by the building of a new fence out into the said highway. (*Saye* v. *Barnes*, 9 Johns. 365.) A highway legally laid out, its continuance as such is to be presumed, unless the proof shows to the contrary. (*Beckwith* v. *Whelan*, 65 N. Y. 322; Laws of 1878, chap. 245, § 1.) The exception taken by the plaintiff to the exclusion by the referee of an alleged conversation with one of the three commissioners of highways is of no avail. (*People* v. *Hynds*, 30 N. Y. 470; *Stewart* v. *Wallis*, 30 Barb. 344; 1 R. S. 525, § 125; *Fitch* v. *Comrs.*, 22 Wend. 132.) Accretions at the end of a highway that runs to the shore and in the line thereof become and remain a part of the highway, and the highway still goes on the same line to the shore, wherever the shore may be. ( *Wetmore* v. *A. W. L. Co.*, 37 Barb. 70–97; *People* v. *Lambier*, 5 Den. 9; Angel on Tide Waters, 64, 218.) The provisions of the Long Island Counties Act of 1789–1830 as to highways,

which existed prior to 1865, have no bearing upon this case. (Laws of 1865, chap. 6; *Key* v. *Goodwin*, 4 M. & P. 341; Sedg. on Stat. Const. 109, 110; *Tivey* v. *People*, 8 Mich. 128; Dwarris on Stat. 676.) Highways by user have always been recognized as legal public highways under the common law and statutes of this state. (*Driggs* v. *Philips*, 103 N. Y. 77; *Hickok* v. *Village of Plattsburg*, 41 Barb. 130; *Bridges* v. *Wyckoff*, 67 N. Y. 130.) The commissioners had the right to remove the fence by proceedings under chapter 245, Laws of 1878, sections 1, 103. (*People* v. *Hunting*, 39 Hun, 455; Laws of 1878, chap. 245, §§ 1, 103, 104; *Baylis* v. *Roe*, 5 N. Y. Supp. 279; *Wetmore* v. *Tracy*, 14 Wend. 250; *Cooper* v. *Bean*, 5 Lans. 318; *Chapman* v. *Gates*, 54 N. Y. 132; Cook on Highways, 309, 310; *Cook* v. *Harris*, 61 N. Y. 448–455; *Driggs* v. *Phillips*, 103 N. Y. 77; *Bridges* v. *Wyckoff*, 67 id. 130; *L. T. Co.* v. *Rogers*, 2 Barr, 114; *Rung* v. *Shoneberger*, 2 Watts, 23; *Dimmett* v. *Eskridge*, 6 Munf. 308; *Gunter* v. *Geary*, 1 Cal. 462; *Davis* v. *Mayor*, etc., 14 N. Y. 524.) Every actual encroachment upon a highway by the erection of a fence or building thereon, or any other permanent or habitual obstruction thereof, may fairly be said to be a nuisance, even though it does not operate as an actual obstruction of public travel. (Wood on Nuisances [Ed. 1883], 260; *Harlow* v. *Hutchinson*, 6 Cow. 189; *Gregory* v. *Commonwealth*, 2 Dana, 417; *Stetson* v. *Faxon*, 19 Pick. 147; *Barker* v. *Com.*, 19 Penn. St. 412; *Rex* v. *Wright*, 3 B. & Ad. 681; Add. on Torts, 225; *L. T. Co.* v. *Rogers*, 2 Penn. St. 114; *Wetmore* v. *Tracy*, 14 Wend. 250; *Dickey* v. *M. T. Co.*, 46 Me. 483; *Harrower* v. *Retson*, 37 Barb. 301; *Wright* v. *Saunders*, 65 id. 214; *Radcliff* v. *Mayor*, 4 N. Y. 195; *Gozzler* v. *Georgetown*, 6 Wheat. 593; *Callender* v. *Marsh*, 1 Pick. 418; *Snyder* v. *Rockport*, 6 Ind. 237; *McFadden* v. *Kingsbury*, 11 Wend. 667; *Andersen* v. *Van Tassel*, 53 N. Y. 631; *Cook* v. *Harris*, 61 id. 448; *Driggs* v. *Phillips*, 103 id. 77; *Perley* v. *Hilton*, 55 N. H. 444; *Kerr* v. *Hammer*, 15 N. Y. Supp. 605; *Morton* v. *Moore*, 15 Gray, 573.)

*N. S. Ackerly* for respondent Smith. The highway in question was a public highway. (*Driggs* v. *Phillips*, 103 N. Y. 77; Laws of 1864, chap. 514; *Davenpeck* v. *Lambert*, 44 Barb. 596; *Porter* v. *Village of Attica*, 33 Hun, 605; *Snyder* v. *Plass*, 28 N. Y. 475; *Hickok* v. *Trustees, etc.*, 41 Barb. 120; *Galatin* v. *Gardiner*, 7 Johns. 107; *Bridges* v. *Wyckoff*, 67 N. Y. 130.) The proceedings of the commissioners of highways entering and describing this road of record, and defining the encroachment and the steps taken to cause removal of fence, were regular. (*Spicer* v. *Slade*, 9 Johns. 359; *Mott* v. *Rush*, 2 Hill, 473; *Cook* v. *Covil*, 18 Hun, 288; *Snyder* v. *Plass*, 28 N. Y. 475.) Independent of any proceeding ascertaining and describing this road of record and subsequent order defining encroachment, etc., the commissioners of highways had the right to remove this fence if this was a legal highway, either by virtue of the laying out in 1746 and statutes confirmatory thereof, or if the road became a public highway by user. (*Beckwith* v. *Whalen*, 65 N. Y. 322.) The commissioners of highways stopped their description of the road at original high-water mark. If they establish the highway to that point, then, as a matter of law, the same will extend over accretions to the present high-water mark. (*People* v. *Lambert*, 6 Den. 9; *Fowler* v. *Mott*, 19 Barb. 204.)

*W. B. Codling* for defendant Kirby and others. As to the defendants Selah Hall and Joseph Conkling, the referee found that they took no part in the alleged trespass; this finding as to them is sustained by the evidence. (*T. & R. R. R. Co.* v. *Kerr*, 17 Barb. 581; *Goodyear* v. *DeLa Vergne*, 10 Hun, 537; *Rous* v. *Whited*, 25 N. Y. 170; *Albro* v. *Figura*, 60 id. 630; *Vanderbilt* v. *Schreyer*, 21 Hun, 537.)

BRADLEY, J. The cause of action alleged is trespass upon the plaintiff's land, in the town of Huntington, county of Suffolk, by entering upon it, taking down his fence and doing other injury to the premises. The defendants deny the alleged wrongful entry, and by way of justification, allege that the

*locus in quo* was a public highway, and that what they did there was done in pursuance to lawful authority in removal of encroachments upon or obstructions within such highway. Whether that defense was sustained by the evidence is the main question requiring consideration. The plaintiff's premises are bounded on the south by the highway, and its northern boundary is the subject of controversy. The earliest evidence on the subject of a highway in that locality was represented by an order of three commissioners, purporting to have been made May 26, 1746, in pursuance of an act of general assembly, in which it is stated that they, " commissioners chosen for the town of Huntington," laid out " one highway two rods wide between the lands of Thomas Bunce and Edward Baylis on the north side, and Alexander Bryan, Jr., on the south side, beginning near the said Baylis' ship yard, bounded by a white oak saplin or stump on the north, and on ye south side of the highway by a maple saplin, so running easterly to Neck Path." It appears that the location so described is substantially that of the highway in question, but the boundary lines of it as there represented, could not be definitely established by evidence, as the oak and maple saplings did not, within the memory of any of the witnesses, remain to mark the outer lines so described of the road. By several deeds of conveyance of the lands on either side of the highway from a time as early as 1816, it is referred to as a boundary. And evidence of witnesses relating to the situation for a period of sixty years before the time of the alleged trespass, tended to prove the location of fences on either side of the highway, and, in reference to them, of certain trees which were referred to for the purpose of identifying the location of the fences prior to 1869, when that on the north side of the highway was moved south. The fence in the location to which it was changed constituted the alleged encroachment upon the highway or obstruction in it. And with a view to proceedings to cause its removal, the commissioners of highways of the town of Huntington, on September 7, 1885, made an order which purported to define and describe the highway. This order,

with a map of the highway so described, was made of record in the town. And on March 29, 1886, the commissioners made a further order describing the encroachment of the fence so moved, etc., and directing its removal. This order annexed to a notice addressed to him was served upon the plaintiff, and after the expiration of sixty days the commissioners directed the overseer of that road district to remove the fence. It was done pursuant to such instruction under the direction of the overseer. The referee found that the place where this fence was situated was part of a public highway, which had been used as such continuously for at least forty years prior and up to the time when the fence was erected in 1869. This finding the plaintiff challenged by exception, as he also did the conclusion that the removal of the fence by the defendants was justified. The order of May 26, 1746, was found among the old records of the town in the proper official custody, and was apparently authenticated by the clerk's indorsement upon it. And there was no error in its reception in evidence, assuming it was within the statutory powers of the commissioners to make such an order. It seems to have been so. (Col. Laws, 1732, ch. 575; Id. 1739, ch. 686.) And so far as they remained in force the colonial statutes were adopted and treated as effectual in this state until altered by the legislature. (Const. 1777, art. 35.) The order recited that it was made "in pursuance of an act of general assembly." It is deemed unnecessary to determine whether, in view of the early period at which the order was made and the subsequent use of the highway, it had the support of presumption that it was duly made, as the question of its reception in evidence was one of order of proof, and no motion founded upon a want of preliminary proceedings was made to strike it out.

The proceedings taken by the commissioners to ascertain and define the boundaries of the highway, were not had in reference to that order of 1746, as it seems, or may be inferred that they were not then advised of its existence. But as appears by the recital in their order, they treated the highway as such by user from 1828, and evidently proceeded in view

of the statute, which provides that all roads not recorded, which have been used as public highways for twenty years or more, shall be deemed public highways (1 R. S. 521, § 100), and that proceedings may be taken for removal of encroachments and obstructions. (Id. § 103, as amended by L. 1878, ch. 245.)

. It is urged on the part of the plaintiff that those statutes were not effectual to support the proceedings taken by the commissioners, because prior to 1864 they had no application to the county of Suffolk, which with the counties of Kings and Queens was, in that respect, governed by statutes specially applicable to them (L. 1789, ch. 14 ; L. 1830, ch. 56), and that it did not appear that the place where the fence was located was any part of a public highway when it was erected there in 1869, as the provisions of the latter act (1830) for entering of record highways created by user, included those only which had been used as such for twenty years or more next preceding the 21st day of March, 1797, and which had been worked and used as such constantly for the last six years. If the fence was not then in a public highway the defendants were trespassers, and as such liable to the plaintiff. And such result would necessarily follow if the use of the *locus in quo* as part of a public highway for twenty years next preceding March 21, 1797, was essential to the defense, as there is no evidence to that effect.

But it may be observed that by L. 1864, ch. 514, the statutes before mentioned specially and exclusively applicable to those Long Island counties, were repealed, as were also laws on the subject applicable only to the counties of Suffolk and Queens, and by L. 1865, ch. 6, the general statutes of the state were extended to those counties. The fence charged to be an encroachment and obstruction in the highway had not yet been erected. And as the road had then been used as a public highway for twenty years, it came within and was subject to the provisions of the statute before mentioned (1 R. S. 521, § 100), and was within the force of the statute which made it the duty of the commissioners to cause such of the highways

" as shall have been used for twenty years, but not recorded, to be ascertained, described and entered of record in the town clerk's office."   (1 R. S. 501, § 1.)

The act of 1830 before referred to did not, in effect, provide that public highways would not be created by twenty years' user as such, but merely limited as there mentioned, the duty of the commissioners to cause them to be entered of record.

The general act of 1813 went further and provided that when roads had been used for twenty years or more next preceding the 21st day of March, 1797, they should be taken and deemed as public highways, although no record of them had been made, and charged the commissioners with the duty of opening to the width of two rods or more all roads which had been so used at that time.   (2 R. L. 277, § 24.)   And until further legislation on the subject the statutory highway by user was only that which had been used as such for twenty years prior to March 21, 1797.   (*Galatian* v. *Gardner*, 7 John. 106 ; *People* v. *Lawson*, 17 id. 277.)   This remained so until 1817, when it was provided " that when any roads have been used as public highways for twenty years or more, the same shall be taken and deemed as public highways, although no record thereof has been made " (L. 1817, ch. 43, § 3), and this was substantially taken into the Revised Statutes, and has since remained in force.   This statutory declaration probably was for its support founded upon the common-law doctrine of dedication to the public by presumption (thus made conclusive) arising from acquiescence on the part of the owner in the use of a road as a thoroughfare for twenty years, a period analogous to that of the limitation applicable to incorporeal rights as between persons.   (3 Kent's Com. 451 ; *Gould* v. *Glass*, 19 Barb. 179.)

Since the amendment in 1878 of the Revised Statutes relating to proceedings to remove encroachments has made them applicable to public highways, which have become such by user, there is no objection to the making use of them in the present case unless, as claimed by him, some vested right existed in the plaintiff to defeat the application of those pro-

ceedings at the time they were taken. That contention cannot be supported if the place where the fence was located was a public highway at the time it was erected there in 1869. This statutory remedy is merely an additional one, in the cases to which it was extended, for the protection of highways to the public use, and in which the adjacent owner had and could by his wrongful act take no vested right as against the public to defeat the remedy, although such particular remedy did not exist at the time he sought to interfere with the public use of some portion of the highway by encroachment and appropriation to his own use.

We have proceeded upon the assumption that the only statutes applicable to the highways in the county of Suffolk prior to 1864–5 were those only which related exclusively to those Long Island counties. But, although, if that were so, it would not, in the view taken, essentially affect any question in the present case, we think that such was not the situation. It is true, as a rule, that laws, special and local, are not deemed repealed by general statutes upon the subject without clear manifestation in some manner of such legislative intent. (*People* v. *Quigg*, 59 N. Y. 83.) And it may be assumed that the provisions of the statutes relating specially to those counties were not superseded by any general legislation, but general statutes consistent with them for purposes for which no provision was made by the local statutes upon the subject of highways, may have been effectual there as well as elsewhere in the state. The provision of the act of 1817 before mentioned, and which became part of the Revised Statutes, declaring the creation of public highways by user, was general and was applicable to the entire state, subject to special and local statutes with which such provision would not be in harmony. It provided for no proceeding, but simply declared that roads which have been or shall have been used as such for twenty years or more shall be deemed public highways. Our attention is called to no statute or statutory system relating exclusively to those counties upon the subject, by which any reason is furnished why that provision of the Revised Statutes

was not applicable alike to them and other portions of the
state prior to as well as since 1865. It is clear that prior to
1869, there was a public highway bounded north by the land
of which the plaintiff afterwards became the owner, and that
it has continued to be such highway.

The remaining questions are whether the fence was within
it, and whether the proceedings taken and had to remove the
encroachment were legally effectual for the purpose. There
was evidence tending to prove that the road as represented by
the location of fences on either side, and used for more than
twenty years prior to 1869, was at least two rods wide; and
the highway, as described by the survey contained in the order
of the commissioners of highways and represented by the
accompanying map, was of the width of two rods. There
was also evidence tending to prove that the northern boundary
of the highway was no farther south than that described by
such survey. This evidence related to a period of upwards of
forty years next preceding 1869, and was sufficient to present
a question of fact, and to warrant the conclusion of the referee
that the fence was within the highway, and the encroachment
such as was described by the survey and represented by the
order.

It follows that the facts were such as to permit the successful
application of proceedings for the removal of the encroach-
ment. In conducting them, it was essential to their validity
that the statute be strictly pursued.

It is insisted by the plaintiff that there was a failure on the
part of the commissioners to do so. The order, as well as the
notice to which it was annexed, for the removal of the encroach-
ment was addressed to the plaintiff. The statute provides
that " every such order and notice shall specify the breadth of
the road originally intended, the extent of the obstruction or
encroachment, and the place and places where the same shall
be." (1 R. S. 526, § 103, as amended by L. 1878, ch. 245.)
It is urged that the order served did not sufficiently or cor-
rectly describe the extent of the encroachment. At one point
in the description of it there was an apparent clerical error in

representing the encroachment in the order, but it is not seen how this could have had the effect to mislead the plaintiff, and by reference to the order and the map therein referred to, it seems quite clearly that it could not.

It is also urged that the notice was defective in that it did not specify the breadth of the road originally intended, the extent and places of encroachments. The specification in the order of the breadth originally intended was somewhat informal, but was sufficiently made there. The construction contended for is that it is not sufficient to have the specification in the order, but its repetition in the notice was essential. The cases cited upon that subject do not to that extent support the proposition. The order containing the specification was annexed to the notice and referred to by it. Both were upon the same paper, and practically constituted a single document. This, we think, was a compliance with the provision of the statute requiring the specification in the order and notice. These views render it unnecessary to proceed to the consideration of the powers of the commissioners, incident to their general care and superintendence of the highways, to remove obstructions in them irrespective of any statutory proceeding, in their application to the present case.

The judgment should be affirmed.

All concur.

Judgment affirmed.