(140 App. Div. 257.)

### In re BENSEL et al.

(Supreme Court, Appellate Division, Second Department.   October 20, 1910.)

1. EMINENT DOMAIN (§ 194\*)—PROCEEDINGS—AMENDMENT—AUTHORITY TO ALLOW.

In proceedings by New York City, under Laws 1905, c. 724, §§ 1–3, 5–7, 11, 23, the city *held* entitled to amend its petition, and the maps made a part thereof, so as to show that the fee of a certain tract shown on the maps was taken subject to an easement left in the owner for the purpose of passage, though the city acquired the fee on the filing of the commissioners' oaths, before the amendment was offered.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 194.\*]

2. EMINENT DOMAIN (§ 191\*)—PROCEEDING—PETITION—MAPS REFERRED TO.

A map filed with the county register in proceedings by New York City to take land for additional water supply purposes, which referred to the petition for a more detailed description of the land taken, is deemed a part of the petition.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 515, 516; Dec. Dig. § 191.\*]

3. ESTATES (§ 5\*)—FEE-SIMPLE ESTATES.

While a fee-simple estate subject to the right in another of a right of way across it is not an unincumbered fee, and the right of way easement would breach a covenant against incumbrances, being an estate of inheritance under the direct provisions of Real Property Law (Laws 1909, c. 52 [Consol. Laws, c. 50]) § 31, it continues to be a fee simple.

[Ed. Note.—For other cases, see Estates, Dec. Dig. § 5.\*]

Rich and Woodward, JJ., dissenting.

Appeal from Special Term, Westchester County.

In the matter of the application of John A. Bensel and others to acquire real estate in the town of Mt. Pleasant for the construction of Catskill Aqueduct.   From an order allowing an amendment to the petition, Hannah J. Pierce appeals.   Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, BURR, RICH, and CARR, JJ.

C. W. Ticknor, for appellant.

Archibald R. Watson, for respondents.

BURR, J.   The decision of this case involves the construction of various provisions of an act entitled "An act to provide for an additional supply of pure and wholesome water for the city of New York; and for the acquisition of lands or interest therein, and for the construction of the necessary reservoirs, dams, aqueducts, filters, and other appurtenances for that purpose; and for the appointment of a commission with the powers and duties necessary and proper to attain these objects."   Laws 1905, c. 724.   Section 1 of said act provided for the appointment of commissioners, to be called the "Board of Water Supply of the City of New York."   Its first duty was to ascertain what sources exist and are most available, desirable, and best for an additional supply of pure and wholesome water for the city of New York, and the act provided that such board—

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"shall make such surveys, maps, plans, specifications, estimates and investigations as it may deem proper in order to ascertain the facts as to the said sources and shall report to the board of estimate and apportionment with recommendations as to what action should in its opinion be taken with reference thereto, so that the board of water supply and the board of estimate and apportionment may be enabled to determine from what source or sources and in what manner the city of New York may best secure an additional supply of pure and wholesome water." Id. § 2.

The board of estimate was given authority to adopt, modify, or reject the whole or any part of said report. Id. § 3. In case of modification or rejection, the board of water supply were required to submit a further report or reports, surveys, maps, plans, specifications, etc., until a map, plan, or plans covering the entire work contemplated by the act should be approved and adopted by the said board of estimate and apportionment. Id. § 3. Upon the approval, adoption, and filing of the final map, six similar maps or plans were to be prepared, one of which, or a certified copy thereof, was to be filed in the office of the clerk of each county in which any real estate laid out on said map should be located, except that in any county in which there is a register's office the said map shall be there filed. Id. §§ 5, 6. The disposition of the remaining maps it is not necesssary to consider here. By section 5 of the said act it was provided that:

"Upon those maps there shall be laid out and numbered the various parcels of real estate on, over or through which the same [the dams, reservoirs, aqueducts and other works of construction] are to be constructed and maintained, or which may be necessary for the prosecution of the work authorized by this act. * * * and there shall be plainly indicated thereon of which parcels the fee, and over or through which parcels the right to use and occupy the same in perpetuity, is to be acquired."

It was then provided that a petition should be presented to the Supreme Court on notice, praying for the appointment of commissioners of appraisal, which petition should contain—

"a general description of all the real estate to, in, or over which any title, interest, right or easement is sought to be acquired for the said city for the purposes of this act, each parcel being more particularly described by a reference to the number of said parcel as given on said maps, and the title, interest or easement sought to be acquired to, in or over such parcel, whether a fee or otherwise, shall be stated in the petition." Id. § 7.

The commissioners were required to take and file an oath of office and—

"on filing the said oath * * * the city of New York shall be and become seized in fee of all those parcels of real estate which are on the maps in the fifth section referred to described as parcels, of which it has been determined that the fee should be acquired, and may immediately or at any time or times thereafter take possession of the same or of any part or parts thereof without any suit or proceeding at law for that purpose." Id. § 11.

The appellant, prior to the commencement of this proceeding, was the owner in fee of about 120 acres of land lying partly within Pleasantville village, about 66 acres of which lies west of the Harlem Railroad, 10 acres between the railroad and Washington avenue, and the balance east of said avenue. There is no public road adjoining the 66-acre parcel. Access to this parcel was had from said Washington

avenue across the 10-acre parcel at its southerly end, and over a grade crossing the railroad tracks and right of way. There was indorsed upon the map prepared and filed by the city in this proceeding a statement that the fee was to be acquired of the real estate appearing on the map in pink, and easements in perpetuity in that colored dark blue. Part of the land owned by the appellant was designated as parcel 969, containing 6.02 acres, lying west of the railroad, which was bordered and inclosed by a broad pink line, and part as parcel 972, containing 1.78 acres, lying between the railroad and avenue, which was also inclosed and bordered by a similar pink line. Parcel 976, lying east of the avenue, containing 0.67 acres, was also bordered and inclosed by a similar pink line, and over 973, lying west of the avenue and extending diagonally therefrom to parcel 972, was shown a right of way colored dark blue, containing 0.28 acres. The petition described the above parcels by boundaries corresponding to said lines, stated the quantity of land contained therein, and contained the following clause:

"The fee to be acquired by the city of New York in all the real estate hereinbefore designated as parcels Nos. 926 to 1005, both inclusive, excepting parcels Nos. 973, 1001, 1002, 1003, in which a perpetual easement is to be acquired for the purpose of building, maintaining, and using the same in perpetuity for highway purposes. * * * Reference is hereby made to the said map filed as aforesaid in the office of the register of the county of Westchester for a more detailed description of the real estate to be taken as above described. * * * Wherefore the board of water supply, for and on behalf of the city of New York and for the purpose of vesting the fee in said city of all parcels, prays this honorable court to make an order for the appointment of three disinterested and competent freeholders," etc.

Commissioners were thereupon appointed, who on March 6, 1909, took and filed their oaths of office. Thereafter they commenced to take proof of the value of the land taken, and the appellant who appeared in the proceeding claimed that, the city having taken in fee the parcels of land over which access to and from the land west of the railroad could be had to the public highway (parcels 969 and 972), she should be awarded consequential damages for the whole of the 66 acres west of the railroad. Thereupon an adjournment was had, and the learned corporation counsel obtained at Special Term an order amending the petition and maps in such way that the means of access to and egress from such land would be preserved to the appellant. The petition for the amendment recited that when the board of water supply prepared said maps—

"it intended to indicate thereby that the city would take all the right, title, and interest of all the owners of parcels Nos. 969 and 972, except that the city would not take, but would leave to said owners, their heirs and assigns, the right in perpetuity to pass and repass over the surface of the ground within that portion of those parcels, designated as 'right of way,' and also that the city of New York intended to take said parcels, with the exception above noted, for all the purposes permitted by chapter 724 of the Laws of 1905 and the acts amendatory thereof and supplemental thereto."

This motion was based upon section 23 of the said act, which provides in part that:

"The Supreme Court of the judicial district in which the real estate, or any part thereof, is situated, shall have power at any time to amend any defect

or informality in any of the special proceedings authorized by this act as may be necessary, or to cause other property to be included therein."

While the petition is not as precise as it might be, the map hereinbefore referred to, and which was filed in the office of the register of Westchester county, and which was referred to in the petition for a more detailed description of the real estate to be taken, and may be deemed, therefore, to be a part thereof, shows with substantial clearness that a right of way was laid down across parcels 969 and 972, which may be deemed to be a right of way excluded from the land taken and preserved for the benefit of the adjoining lands. The lands comprising such parcels were to be taken subject to such right of way. While the map might have shown this with a greater degree of precision, this is fairly indicated, and it seems to us, therefore, that this is not, accurately speaking, an amendment of the petition and map, but rather an amendment of the petition to conform to the map. The effect of the amendment was to make both speak more precisely and definitely regarding the intent of the city as to the land and the rights therein to be taken, and not to express an intent to take other or different lands. It is true that the petition does speak of taking the lands in parcels 969 and 972 in fee. The land to be taken, comprised within these parcels, is a fee. Real Property Law (Laws 1909, c. 52 [Consol. Laws, c. 50]) § 31. It is true that it is not an unincumbered fee, and, in a deed containing a covenant against incumbrances, the existence of such a right of way would be a breach of the covenant. Huyck v. Andrews, 113 N. Y. 81, 20 N. E. 581, 3 L. R. A. 789, 10 Am. St. Rep. 432.

The effect of the amendment, however, is not to permit the city to take a mere easement over lands the fee of which still remains in the property owner, but to take the fee of such lands subject to an easement allowed to the former owner thereof for purposes of access to the adjoining land. It is probable that the amendment granted will not affect substantially, if at all, the value of the land included in parcels 969 and 972, although it will doubtless seriously affect the consequential damages resulting to the adjoining land by reason of the taking of these parcels. The provision of the act with regard to the vesting of title must be read in connection with the provisions thereof allowing defects in the proceedings to be remedied. To reverse this order, and deny the application, would permit the property owner to take advantage of an unsubstantial error arising out of a possible variance between the specific description in the petition and the more general description in the map, referred to and made a part thereof, to the great disadvantage of the municipality, and when the rights of the landowner have not been in any manner prejudiced by such error.

The order appealed from should be affirmed, with $10 costs and disbursements.

HIRSCHBERG, P. J., and CARR, J., concur.

RICH, J. I dissent. The relief granted in this case is an amendment of the petition and map so as to show that the right in said parcels 969 and 972, proposed to be taken, is the title in fee, except the

two portions thereof shown and indicated on the proposed amended map as "right of way," which the city proposed to acquire a right to occupy in perpetuity for the purposes permitted by said chapter 724, "in so far as the same will not interfere with the right of the owner or owners thereof, their heirs or assigns, to. pass and repass over the surface of the ground with persons, animals or vehicles."

The precise question presented is whether the Special Term had jurisdiction or authority to grant the order allowing the amendment, in view of the provisions of section 11 of the act vesting the fee of the whole of parcels 969 and 972 in the city upon the filing of the oaths of the commissioners. I do not think it had. The statute having been strictly followed in all of its requirements, the appellant was divested of her title to all of the land embraced within the pink borders inclosing parcels 969, 972, and 976, and it vested in the city of New York upon and by the filing of the oaths of the commissioners on March 6, 1909. The moment the title vested in the city, the right to compensation for the land so taken, and damages to that portion of which she retained the fee, vested in the appellant, and could not thereafter be defeated or reduced by an amendment of the petition or map, nor could the city by such action divest itself of, or revest in the appellant, the fee to such land or any part thereof. Real Property Law, § 242. It is immaterial what the city intended to do. Its intention cannot be permitted to control, in view of the fact made certain by the record. People ex rel. Johnson v. Whitney's Point, 32 Hun, 512, affirmed 102 N. Y. 81, 6 N. E. 895. The rights of the parties rest upon what the city did in fact do. The petition and map form the record from which the respective interests of the parties must be determined (Bell Telephone Co. v. Parker, 187 N. Y. 299, 303, 79 N. E. 1008), and they establish that, under and by virtue of the legislative act, the fee of the whole of parcels 969 and 972 vested absolutely in the city upon the filing of the commissioners' oaths, and the right to compensation therefor and damages to remaining land vested absolutely in the appellant at the same time.

It is suggested that there was no necessity for the acquisition of the land divested of all easements therein and rights of way of the appellant for access to her remaining land. The answer is that the question of necessity for the exact land and interest therein acquired by the city was delegated by the Legislature to departments of the city, and, having been exercised by them, cannot be reviewed or questioned by the courts. In re Fowler et al., 53 N. Y. 62; Matter of Deansville Cemetery Association, 66 N. Y. 572, 23 Am. Rep. 86; In re City of New York, 190 N. Y. 357, 83 N. E. 299; Matter of Niagara Falls & Whirlpool Railway Co., 108 N. Y. 375-383, 15 N. E. 429; In re City of Buffalo (Super.) 15 N. Y. Supp. 124; Lewis on Eminent Domain (2d Ed.) vol. 2, § 393. It seems to me that, when the Legislature by enactment has said that upon the happening of an event the appellant was immediately divested of the fee to all of her land which the city announced that it proposed to acquire in fee, courts cannot say by order or otherwise that the fee of such land, or any part thereof, did not pass, but is still in her, subject only to an easement, or, if it did pass, that by amendment of the petition and map the city shall be di-

vested of a portion of such land and the fee thereof vested in the appellant, subject to an easement therein by the city. The word "fee" has a definite and legal meaning, and is wholly inconsistent with the contention that an easement only in some portion of the land was authorized to be taken, or that as to such portions the appellant was not to be divested of all rights she had therein, but was to retain a right of way over it to that portion of her 66 acres not taken. Sweet v. B., N. Y. & P. Ry. Co., 79 N. Y. 293, 300, 301.

It is clear that the amendment is not authorized by section 23 of the statute. The authority therein given to the court is limited to "any defect or informality," neither of which forms the basis of the motion to amend. The action of the court in allowing the amendment does not operate to remedy a "defect or informality," but an alleged mistake or error on the part of the board of water supply in the petition and map, which changed its intention to acquire an easement, or the fee subject to an easement, in part of the land, to the acquisition of the absolute fee thereof. The amendments affect the substantial rights of the appellant, and bring the case within the rule that amendments of this character apply only to immaterial or clerical errors, or defects not affecting the substantial rights of the parties, and do not permit an amendment having the effect of those allowed in the case at bar. Matter of Application of N. Y. & W. S. R. R. Co., 89 N. Y. 453; Chester v. Buffalo Car Mfg. Co., 183 N. Y. 425, 76 N. E. 480; Bohlen v. Met. El. Ry. Co., 121 N. Y. 546, 24 N. E. 932.

Under these circumstances, I must vote for reversal of the order.

WOODWARD, J., concurs.