17 N.Y.2d 352 (1966)
Leona Heyert, Respondent,
v.
Orange and Rockland Utilities, Inc., Appellant.
Court of Appeals of the State of New York.
Argued March 29, 1966.
Decided June 2, 1966.
Cameron F. MacRae, David H. Moses and Carl D. Hobelman for appellant.
Jesse I. Etelson for respondent.
Nixon, Hargrave, Devans & Doyle for Rochester Gas and Electric Corporation, amicus curiæ.
G. Wallace Bates, Saul Scheier and Robert Luce Donohue for New York Telephone Company, amicus curiæ.
Morrell S. Lockhart, Theodore J. Carlson and M. Wade Kimsey for Central Hudson Gas & Electric Corporation, amicus curiæ.
Edward F. Huber and Norman C. Frost for New York State Electric & Gas Corporation, amicus curiæ.
Edward M. Barrett, Edward J. Walsh, Jr., and Ira L. Freilicher for Long Lsland Lighting Company, amicus curiæ.
Judges FULD, BURKE and SCILEPPI concur with Judge VAN VOORHIS; Judge KEATING concurs in a separate opinion; Chief Judge DESMOND dissents and votes to reverse in an opinion in which Judge BERGAN concurs.
*356 VAN VOORHIS, J.
Plaintiff, who owns property on East Willow Tree Road in the Town of Ramapo, Rockland County, sued to compel the defendant to remove a gas main installed beneath the highway and maintained under a franchise granted by the Town Board. Defendant moved for summary judgment dismissing the complaint, or, in the alternative, for an order fixing plaintiff's damages, if any, and requiring plaintiff to convey an easement to defendant.
The Appellate Division and Special Term held that plaintiff is entitled to damages for the reason that there has been an unauthorized taking or use of her property for a purpose which is not a highway or street use under the public easement existing *357 by virtue of the use of the roadway as a public street, and that plaintiff is entitled to compensation on the same basis as in any case of partial taking through the exercise of the power of eminent domain. Defendant argues that the installation of a local gas main is within the scope of the easement of the town to use the land for public highway purposes.
The facts are not in dispute. Plaintiff has the underlying title to real property extending to the center of East Willow Tree Road. This highway was acquired by the town by user under what is now section 189 of the Highway Law, which dates back at least to section 3 of chapter 43 of the Laws of 1817, which was founded upon the common-law doctrine of dedication to the public by a grant, presumed to have been made, which has become conclusive by acquiescence on the part of the owner in public use as a highway coupled with improvement and maintenance by the public authorities during a period of time analogous to that of the limitation applicable to private persons claiming title through adverse possession (James v. Sammis, 132 N.Y. 239; Palmer v. Palmer, 150 N.Y. 139, 147-148; Goldrich v. Franklin Gardens Corp., 138 N. Y. S. 2d 731, affd. 2 A D 2d 752, affd. 2 N Y 2d 906; Speir v. Town of New Utrecht, 121 N.Y. 420). This statute provides that "All lands which shall have been used by the public as a highway" for the requisite number of years "shall be a highway, with the same force and effect as if it had been laid out and recorded as a highway, and the town superintendent shall open all such highways to the width of at least three rods." Public highways arising from presumption of dedication through user under section 189 of the Highway Law, or by written instrument "for highway purposes" delivered and accepted under section 171, do not involve the conveyance of a fee but the transference of an easement to the public for the purpose of a highway (Osborne v. Auburn Tel. Co., 189 N.Y. 393). It is conceded here that plaintiff owns the fee to half of the street, and that the Town of Ramapo has an easement for highway purposes. The point at issue concerns whether such an easement includes the right to lay gas mains beneath the street, or, if the town does not do so itself, to grant the right to lay such mains to a private utility corporation. In this instance, the Town of Ramapo attempted to do the latter.
*358 The grant by the town to the utility corporation was made in 1928, and, in terms, purports to authorize the corporate predecessor of appellant "to lay and maintain pipes and mains with necessary connections for the purpose of conducting and distributing gas in and through all public streets, alleys, rights of way and avenues of the Town of Ramapo". The record does not disclose when East Willow Tree Road was first used, but, if the town had perfected its easement for highway purposes by 1928, when the franchise was granted, the road must have been maintained as a highway by the town at least since 1908. Prior to the grant of the franchise this section of the town was exclusively rural, and, to a considerable extent, it still is rural. No until 1962 did defendant or its predecessor commence to lay its mains in this highway. Special Term and the Appellate Division have held that the easement acquired by the town for highway purposes did not include the right to lay gas mains and that, consequently, the town could not grant to the utility a right which it did not possess.
The cases are in point which deal with the scope of written grants of rights of way, or of easements for highway purposes, since, as has been mentioned, highways by user are acquired through the presumption of a lost grant for highway purposes under the language of the statute.
As recently as 1959 we held in Holden v. City of New York (7 N Y 2d 840, 841) that "The reservation of a mere `right of way' under the decisions included only the right of passage over the surface of the land (Thompson v. Orange & Rockland Elec. Co., 254 N.Y. 366; Osborne v. Auburn Tel. Co., 189 N.Y. 393; Eels v. American Tel. & Tel. Co., 143 N.Y. 133; Ferguson v. Producers Gas Co., 286 App. Div. 521; Matter of Bensel, 140 App. Div. 257)."
The contention of appellant is unsound that in the case of East Willow Tree Road in the Town of Ramapo an easement for highway purposes, perfected before 1928, included the right to lay gas mains underground on any theory that in rural areas an easement for highway purposes comprises only the right to pass over the surface of the land whereas in villages or other populous sections it includes overhead and underground construction for utility mains and services to private consumers. This tenuous distinction between rural and more populous *359 highways was discarded in Osborne v. Auburn Tel. Co. (189 N.Y. 393, supra), which held that the owner of the fee of land to the center of a city street was entitled to be compensated for the acquisition of a telephone easement. It was decided after Whitcher v. Holland Water Works Co. (66 Hun 619, affd. 142 N.Y. 626) and Van Brunt v. Town of Flatbush (128 N.Y. 50) on which appellant relies. Moreover even if the Whitcher and Van Brunt cases had remained the law, it would not assist appellant inasmuch as it is undisputed that this was a rural highway at the time when the easement was acquired and the franchise granted to appellant. The opinion of the court in the Osborne case said (p. 396) that the question whether the maintenance of telephone and telegraph poles for the purpose of stringing wires is a street use and deemed to be within the grant of lands for highway purposes "was distinctly answered in the negative in the case of Eels v. American T. & T. Co. (143 N.Y. 133), and again in Palmer v. Larchmont Electric Co. (158 N.Y. 231.)" It was later pointed out in Thompson v. Orange & Rockland Elec. Co. (254 N.Y. 366) that utility mains for the service of domestic consumers, which is not a highway purpose, is to be distinguished from wires or storm sewers for lighting or draining the street itself. The latter are included within a public highway easement inasmuch as they are uses such "as appertain directly or indirectly to the right of passage and tend in some way to preserve or make more easy the exercise of such right" (254 N. Y., supra, p. 369). Nothing further was held in Palmer v. Larchmont Elec. Co. (158 N.Y. 231). In the Thompson case it was stated that "No distinction can now be drawn between city streets and country highways in this regard" (p. 369).
The only basis on which this order could be reversed would be that the law on this subject, unequivocally reiterated as recently as 1959 in Holden v. City of New York (7 N Y 2d 840, supra) and in 1955 in Ferguson v. Producers Gas Co. (286 App. Div. 521), should be overruled on the ground that times have changed.
The principle of stare decisis rests more lightly on the shoulders of judges and lawyers today than formerly. Justice HOLMES' aphorism that it is revolting to have no better reason for a rule than that so it was decided in the reign of George II *360 needs to be regarded in context. Although he did not hesitate to alter precedent where the course of the industrial revolution had made departure necessary on account of matters of grave social consequence, he was too sound a jurist to undervalue the importance of promoting certainty, stability and predictability in the law (Hertz v. Woodman, 218 U. S. 205). Thus he concurred in the unanimous court which decided Rock Spring Co. v. Gaines & Co. (246 U. S. 312, 320), quoting and approving the language of SANBORN, J., that "`Uniformity and certainty in rules of property are often more important and desirable than technical correctness'" from Layton Pure Food Co. v. Church & Dwight Co. (182 F. 35, 39). HOLMES likewise joined in the opinion in United States v. Title Ins. Co. (265 U. S. 472, 486-487), which ruled that a long-standing decision of a doubtful question, which has become a rule of property affecting many land titles, should not be disturbed. The court there said: "As long ago as Minnesota Co. v. National Co., 3 Wall. 332, this Court said, p. 334: `Where questions arise which affect titles to land it is of great importance to the public that when they are once decided they should no longer be considered open. Such decisions become rules of property, and many titles may be injuriously affected by their change. Legislatures may alter or change their laws, without injury, as they affect the future only; but where courts vacillate and overrule their own decisions on the construction of statutes affecting the title to real property, their decisions are retrospective and may affect titles purchased on the faith of their stability. Doubtful questions on subjects of this nature, when once decided, should be considered no longer doubtful or subject to change.' That rule has often been applied in this and other courts".
This court has often emphasized the importance of enforcing law as it finds it in decisions (Sternleib v. Normandie Nat. Securities Corp., 263 N.Y. 245) holding that "established precedents are not lightly to be set aside even though they seem archaic"; the remedy being ordinarily with the Legislature (Schindler v. Royal Ins. Co., 258 N.Y. 310, 314).
Stare decisis is, to be sure, not a rule of law, but a matter of judicial policy, and does not have the same force in each kind of case, so that "adherence to or deviation from that general policy may depend on the kind of case involved, especially *361 the nature of the decision to be rendered, and the result that may follow from the overruling of a precedent." (20 Am. Jur. 2d, Courts, § 192, pp. 528-529.) We would not deny that there are instances, such as the personal injury case of Woods v. Lancet (303 N.Y. 349, 354), where it is the duty of the court to re-examine the question if justice demands it especially where, as in that instance, there was only one prior precedent in the jurisdiction decided by a sharply divided court, nor in other personal injury cases such as Bing v. Thunig (2 N Y 2d 656) regarding responsibility of hospitals for negligence of their professional employees, Kilberg v. Northeast Airlines (9 N Y 2d 34) involving the enforcibility in this State of a maximum liability provision in the death from negligence statute of a sister State where a New York resident was concerned, or Babcock v. Jackson (12 N Y 2d 473) and Long v. Pan Amer. World Airways (16 N Y 2d 337) where the principle in personal injury and death cases was carried still farther in the field of conflict of laws. Goldberg v. Kollsman Instrument Corp. (12 N Y 2d 432) was a personal injury case.
In the field of commercial law the courts have been slower in deviating from precedent (United States v. Flannery, 268 U. S. 98). The prior precedent is more likely to have guided numerous people in their conduct. Even in the often cited case of Klein v. Maravelas (219 N.Y. 383), where a decision of 12 years' standing was overruled holding bulk sales acts to be unconstitutional, the Legislature had enacted a new statute so that the decision did not become retroactive to the date of the earlier act. The author of the opinion in Klein v. Maravelas was aware of the problem, as appears from his 1932 address before the State Bar Association (Report of N. Y. State Bar Assn., Vol. LV, pp. 295-296), in discussing Madfes v. Beverly Development Corp. (251 N.Y. 12) holding gas ranges in apartment houses to be mere personalty and not fixtures. After indicating that it was the consensus of the court that they should be treated as fixtures, Chief Judge CARDOZO stated: "But what did stare decisis have to say upon the subject? Why, as late as 1913, in days when the apartment house had been fully developed, the Court of Appeals held in a carefully considered case that ranges were not fixtures, and this in the face of an opinion at the Appellate Division which had maintained that they were and had *362 emphasized the new conditions of apartment life as justifying a departure from ancient precedent (Central Union Gas Co. v. Browning, 210 N.Y. 10, reversing 146 App. Div. 783). Now what was a court to do in 1929 when the same court in 1913 had considered the same argument and found it insufficient? What was it to do, bearing in mind the fact that sellers of the ranges under contracts of conditional sale had made their sales in the faith that the ranges were personalty merely, and had refrained from taking measures to protect themselves by recording their bills of sale in ways that would have been appropriate if they had supposed that the ranges were annexations to the land?"
That language is reminiscent of Eels v. American Tel. & Tel. Co. (143 N.Y. 133) which followed precedent in holding that telephone poles and wires are not included in a highway easement, where the opinion says at page 142: "The argument is pressed upon us that the question to be decided in this case is new and that it ought to be decided with reference to the wants and customs of the advancing civilization which it is alleged is doing so much to render life more comfortable, attractive and beautiful. Courts are frequently addressed with such arguments, which are quite forcible, and they have in this case been very eloquently, plausibly and aptly advanced. The answer to be made is that, although this particular phase of the question, strictly speaking, may itself be new, yet the principle which governs our decision is as old almost as the common law itself; and in deciding this appeal favorably to the defendant herein, we should be overturning and making nothing of cases which have been regarded as the law for generations past."
Whatever changes in a developing industrialized civilization might have called for a change in the rule were present and considered in Eels, as they were again in Thompson v. Orange & Rockland Elec. Co. (254 N.Y. 366, supra), and still again in 1959 in Holden v. City of New York (7 N Y 2d 840, supra).
Although courts are not compelled to follow so-called rules of property, "the doctrine of stare decisis is more strictly followed where property rights, especially rights in real property, are concerned and where rights have become vested in reliance on the precedents. Conversely, a court is less reluctant to deviate from *363 an established precedent where no rule of property or vested right is affected." (20 Am. Jur. 2d, Courts, § 196, pp. 531-532.)
Argument can be made for and against the interpretation of highway and right-of-way easements as including, in the absence of further words, passage merely over the surface of the land. Many a town highway is donated through dedication by abutting owners, and the equivalent of many dollars is thus obtained for public use from private owners who might hesitate to do so if they were aware that, without mentioning them, they were also conveying pole and wire easements for telephone and power, and for conduits below ground, as well as for mains for sewer, water and gas for the service of private consumers. Whatever the rule might be if this were a case of first impression, it is certain that thousands of deeds conveying rights of way between private parties and instruments of dedication of public highways have been made on this rule, which has existed since the common law began in this State and which received its most recent expression unequivocally in this court in 1959. It has ripened into a rule of property which cannot be changed retrospectively without altering the substance of prior land grants. The long succession of decisions on this subject fits the classic definition of a rule of property as stated in United States v. Standard Oil Co. (20 F.Supp. 427, 458, affd. 107 F.2d 402, cert. den. 309 U. S. 673), as a principle of decision that is "fixed, long-continued, and relied upon by persons acquiring property" quoted in Matter of West (289 N.Y. 423, 431).
It is said that the compensation to be paid in condemnation of an easement for gas mains would be nominal, citing Matter of City of New York (Braddock Ave.) (278 N.Y. 163), and that consequently the courts should not trouble themselves with whether the grant of a highway easement conveys fee title or easements for overhead or underground construction by public utilities. That presupposes that the decisions on this subject through the years have been a waste of time and effort. The case last cited does not hold that merely nominal damages must be awarded as matter of law, but only that the finding of fact in that particular case should be affirmed. It was pointed out in the opinion that the record lacked evidence that the value, in that instance, of any possible use of the land beneath the street *364 would equal the cost of excavation and structural support above such excavation, that additional land was plentiful and, therefore, comparatively cheap, in consequence whereof the finding of nominal value was sustained by the evidence. No rule of law was promulgated that only nominal damages can be recovered in all instances especially where, as is usual in the case of town highways, the property lines of a street are wider than the paved portion so that no excavation of the paved surface is necessary to the construction of overhead or underground utility mains except for service connections on the opposite side of the street. Sackman's Nichols on Eminent Domain (3d ed., Vol. 5, § 18.5) says that the burden of proof of establishing the right to substantial compensation is upon the owner citing Matter of Mayor of City of N. Y. (Walton Ave.) (131 App. Div. 696, affd. 197 N.Y. 518), concerning which there can be no question, but the owner is not to be foreclosed of opportunity to prove that his damages are substantial. The opinion by the Appellate Division in the Walton Ave. case states, so that there may be no question about it, that a grant of land for street purposes does not convey the fee and that the owner is entitled to recover whatever it is worth if it is subsequently appropriated. As was said in Matter of City of New York (West 10th St.) (267 N.Y. 212, 220), "The appellant is entitled to be fully compensated for its loss but is not entitled to be paid more than the damages actually suffered." How much that may be, in a particular case, is not within the jurisdiction of the Court of Appeals to find in the first instance.
Even apart from stare decisis, an argument of considerable weight is made to support the merits of the existing rule. Installation of subsurface gas lines under a roadway owned in fee by the adjacent owner and subject only to a right-of-way easement is in essence a partial taking which, in many ways, may cause only nominal damage but in some instances may result in serious consequential damage to the adjacent land.
In the old cases (Matter of Bloomfield & Rochester Natural Gas-light Co. v. Calkins, 62 N.Y. 386 and Trustees of Presbyt. Soc. v. Auburn & Rochester R. R. Co., 3 Hill 567), cited in Eels v. American Tel. & Tel. Co. (143 N.Y. 133, 141, supra), the courts reason that a gas main use goes far beyond the use of the surface of a highway and that the utility company seeks to *365 dig in the soil although such digging may cut off drains and disturb other privileges of the owner. As our court wrote in the Bloomfield case (62 N. Y., at pp. 389-390), "The right contended for, is to dig in the soil, cut off drains, and disturb privileges, which had been exercised by the owner, for a long period of time. The use of the highway thus sought to be maintained is different, more injurious and liable to produce far greater damages to the owner of the fee, than mere passing or repassing, and the pecuniary loss occasioned by the exercise of such a power must necessarily be far more extensive, and unlimited in its character. * * * The right to the fee, to the fruits of the soil * * * would be taken away, diverted and appropriated for the purposes of a corporation, without compensation and contrary to the clear and manifest original design contemplated by the laying out of the highway, and the intention of the owner of the fee, when he parted with his interest. Can it be pretended that either the public or the owner intended to be deprived of the rights which the law conferred upon him, and to subject himself to a direct interference in their enjoyment?"
The order appealed from should be affirmed, with costs, and the question certified answered in the affirmative.
KEATING, J. (concurring).
I agree that the order appealed from should be affirmed only because I feel constrained by the numerous decisions of this court which make the rule to be followed unmistakably clear (see Thompson v. Orange & Rockland Elec. Co., 254 N.Y. 366; Osborne v. Auburn Tel. Co., 189 N.Y. 393; Holden v. City of New York, 7 N Y 2d 840). But a rule which had its origin in the limited uses to which public streets were once put should not forever handicap the obvious necessities of modern day needs. At this late date, however, any change to be made should only be made by the Legislature.
Chief Judge DESMOND (dissenting).
It is absurd to grant plaintiff an injunction or a condemnation award, and we should forthrightly say so. This is not a situation where a landowner gives a limited easement only (as in Holden v. City of New York, 7 N Y 2d 840) or where some use, novel at the time, is made of land dedicated for highway uses only (as in Matter of Bloomfield & Rochester Natural Gas-light Co. v. Calkins, 62 N.Y. 386). Plaintiff's title runs on paper to the center of a highway but *366 this highway has existed so long in its present location that no one knows how or when it became such. Whatever be its history, it is now as much of a public road as if it had been bought and paid for with public funds (see Highway Law, § 189). True, plaintiff on paper holds the fee title for one half of the width of this highway subject only to a highway easement, but in common sense that highway easement includes such customary and reasonable uses of the strip as are within the general purposes of a public highway easement. That a highway easement includes subsurface uses for water pipes and sewage pipes has been held since the Whitcher v. Holland Water Works Co. case (66 Hun 619) decided in 1892 and affirmed here without opinion in 1894 (142 N.Y. 626). Transmission of gas for lighting and heating homes, including plaintiff's home, is certainly a reasonably necessary use of the roadway in 1966. The only modern expression to the contrary is the dictum in the Thompson v. Orange & Rockland Elec. Co. case (254 N.Y. 366, 369). The Holden case (7 N Y 2d 840, supra) is, as above stated, not in point since it passes on the effect of reserving "a mere right of way".
Even if we were to theorize that this ancient easement does not include the laying of gas pipes under the roadway, we still should dismiss the suit on the ground that this right of plaintiff cannot possibly have more than a nominal value. No court could or would say that plaintiff's property, incumbered by half of a public highway for generations, is now worth substantially less because hidden under the pavement there will be a gas main to serve plaintiff and her neighbors.
We may judicially notice that generally in rural areas titles run to the center of the highways. Is it to be the law that any time gas pipes or electric conduits are put under such a road the owners on both sides would be entitled to damages?
To say that plaintiff is entitled to an injunction or damages because there are gas service pipes under the road in front of her house would be like saying that when the few horse-drawn vehicles gave place to automobiles in great numbers, she could have had relief in the courts because of the added burden not anticipated when the strip was dedicated to public highway uses.
There should be a reversal and dismissal of the complaint, with costs.
Order affirmed, etc.